[Decided October 5, 1892.]

JOSEPH LIGGETT ET AL. *v.* W. S. LADD ET AL.

[S. C. 31 Pac. Rep. 81.]

1. PLEADING — AMENDMENTS — CODE, § 101.—A complaint may be amended by changing a party from defendant to plaintiff, under 1 Hill's Code, § 101, permitting pleadings to be amended by striking out or adding the name of a party.

2. IDEM.—An amendment to a complaint to set aside a deed to an agricultural college, alleging that a defendant college which held the land in trust for the plaintiff church is unwilling to execute the trust until judicial determination that its deed to the agricultural college is of no force, does not set up a new cause of action in making the trustee college a plaintiff, instead of a defendant, and in alleging that such trustee is prevented by such deed from executing the trusts since the same evidence will support both complaints and the same measure of damages will apply to both.

3. AGRICULTURAL COLLEGE — CORPORATIONS — POWER TO HOLD AND CONVEY LAND.— Corvallis College, incorporated to hold property in trust for a certain church, for the support and spread of the Christian religion, and to endow, build up, and maintain a strictly literary institution for educational purposes, and which had been designated as the state agricultural college, although no agricultural college *eo nomine* was established, had power to take title to a farm paid for by subscriptions which were stated to be for the purpose of purchasing an agricultural farm for it, without holding subject to any trust in favor of the church, and upon discontinuing the teaching of agricultural subjects and returning to its original purpose of a strictly literary institution, it may convey such farm to the board of regents of the state agricultural college, which is a corporation capable of taking and holding the title.

4. The board of regents of the state agricultural college is a corporation capable of taking and holding the title to real property. *Dunn* v. *University of Oregon*, 9 Or. 357, approved.

Multnomah County. E. D. SHATTUCK, Judge.

Defendants appeal. Reversed and complaint dismissed.

Suit by Joseph Liggett and others, members of the Methodist Episcopal Church South, against W. S. Ladd and others, regents of the agricultural college of the state of Oregon, and against Corvallis College, to set aside a deed. An amended complaint changed the Corvallis College from a defendant to a plaintiff. The case was originally tried in Benton County, and was before this court in 1888: *Liggett* v. *Ladd*, 17 Or. 89 (21 Pac. Rep. 133). After reversal there was a trial in Multnomah County, which resulted in a decree for plaintiffs.

*John Burnett, James F. Watson,* and *L. Flinn ( J. R. Bryson* and *Edw. B. Watson* on the brief), for Appellants.

*George H. Williams ( C. E. S. Wood* on the brief), for Respondents.

On the fifteenth day of October, 1887, the plaintiffs, Joseph Liggett, John Rickard, and Casper Rickard, filed in the circuit court of Benton County their complaint against all the appellants and Corvallis College, in which it is alleged that they are members in good standing of the Methodist Episcopal Church South, and bring this suit for themselves as members of said church and for other members too numerous to be made parties to the same; that said church is an unincorporated religious association embracing in its membership a large number of persons in various parts of Oregon, with societies, churches, and ministers, devoted to the spread and support of the Christian religion; that Corvallis College, defendant, is an educational institution located at Corvallis, Oregon, incorporated under the laws of said state, and the other defendants claim and assume to be and act as board of regents of the state agricultural college of the state of Oregon; that Corvallis College was incorporated August 22, 1868; that it is provided in its articles of incorporation as follows: "The object of this incor-

poration is to acquire and· hold property in trust for the
Methodist Episcopal Church South, in the state of Ore-
gon, and to endow, build up, and maintain an institution
for educational purposes, and to confer all such honors,
distinctions, and degrees as are usual in colleges; to be
conducted and carried on under the direction and control
of the trustees aforesaid and their successors in office;
*provided*, that said college shall be a strictly literary
institution." The trustees as aforesaid, were appointed
by the Columbia conference of the Methodist Episcopal
Church South, at their last meeting, and their successors
will be appointed at the next annual conference, and so
on in perpetual succession according to the laws, customs,
and usages of said church. That on the third day of
January, 1876, the trustees filed supplementary articles,
adding the following clause, "and with full power and
authority to make, execute, and deliver checks, promis-
sory notes, and bills of exchange for the purpose of pay-
ing the debts of said institution and purchasing property
necessary for the same; and to make, execute, and deliver
deeds and mortgages of all or any of the property of
said institution when the same shall be sold or mort-
gaged, and to sell any and all property belonging to said
college, when the same may be deemed unsuitable, and to
purchase and hold other property of any name or nature,
necessary or suitable to complete success and purposes
of said institution, not exceeding the sum of five hundred
thousand dollars"; that on October 21, 1870, the legisla-
tive assembly of Oregon by its act, duly passed, desig-
nated and permanently adopted Corvallis College as the
agricultural college of the state, with a provision in said
act that said college should accept the same·and be bound
thereby; and on the twenty-ninth day of October, 1870,
the said act with all its provisions was duly accepted by
and has since been duly observed and kept by the said
college, whereby said Corvallis College has ever since
been and now is the permanent agricultural college of
the state of Oregon; that since said time said college has

been and now is receiving pupils and educating and fitting them for agricultural pursuits, according to the laws, regulations, and usages applicable to an agricultural college; and large contributions of property and money, by members of the Methodist Episcopal Church South and other persons, have been made to the support of said college as the agricultural college of the state; that on the seventeenth day of April, 1871, George Roberts and Elizabeth Jane Roberts, his wife, for the consideration of $4,500 paid to them, conveyed to Corvallis College the real property which is the subject of this suit and which is generally referred to by the witnesses as the college farm. That said deed contains the following provisions: "And this conveyance is made to said Corvallis College, to the end that the premises be used by said college as an agricultural farm, in connection with and for the purpose of the agricultural college of the state of Oregon. Now, whenever said premises shall cease to be used or occupied for the purpose of said agricultural college, then the said premises shall vest and become the property of the several persons who have or shall contribute to the purchase money in the proportion contributed by each person"; that said $4,500, the purchase price of said property, consisted of moneys contributed for the purchase thereof by members of the Methodist Episcopal Church South and other persons.

That at the annual session of the Columbia conference of the Methodist Episcopal Church South, held at Albany, Oregon, Sept. 10, 1885, J. M. Osburn, Robert L. Buchanan, D. C. McFarland, R. S. Stratton, J. D. Lee, R. P. Boise, J. R. N. Bell, E. B. McElroy, J. W. Applewhite, E. G. Michael, B. F. Burch, James A. Cauthorn, B. L. Arnold, M. Jacobs, Joseph Emery, J. W. Johnson, R. C. Oglesby, and J. W. Compton were appointed trustees of Corvallis College and continued such trustees until September 15, 1886; that said conference at the same session adopted a resolution declaring in effect that no change should be made by the trustees of said college affecting its rights

or standing as the agricultural college of the state of
Oregon, and the said Columbia conference is and has
at all times been the lawful and duly authorized repre-
sentative of the Methodist Episcopal Church South in
Oregon; that on the fifth day of February, 1886, the said
R. L Buchanan, J. B. Lee, J. R. N. Bell, E. B. McElroy,
J. W. Applewhite, B. F. Burch, A. Cauthorn, B. L. Arnold,
M. Jacobs, and James A. Cauthorn of the trustees of said
college assembled at the chapel of said college in Cor-
vallis, Oregon, and with a full knowledge of the action
of said conference of September 10, 1885, as above set
forth, by a majority vote passed the following resolu-
tion: ''That the president and secretary of this board
be ordered to deed the college farm to the state of Oregon,
or its constituted authorities." That said meeting was
not legally called or assembled, and that said meeting
and said resolution were and are irregular, illegal, and of
no effect; that on the twentieth day of February, 1886,
the said J. B. Lee, acting as president, and that the said
James A. Cauthorn, acting as secretary, of Corvallis Col
lege, in the name of said college, executed and delivered
to the board of regents of the state agricultural college
of Oregon, a deed conveying said real property (the col-
lege farm) to them; that said deed was without any con-
sideration or benefit to Corvallis College and with full
knowledge by the grantee of the trust set up in the com-
plaint; that the board of regents of the state agricultural
college was never a lawful or corporate body and never
had any capacity to take or hold said property; that
Corvallis College received and held said property in
trust for plaintiff and other members of the Methodist
Episcopal Church South in Oregon; that said resolution
of February 5, 1886, and said deed of February 20, 1886,
were made and executed in violation of said trust and
contrary to the known and expressed will of said church,
and will, if held valid, work irreparable injury to said
college as the agricultural college of said state and
weaken the influence and power of said church for educa-

tional and religious purposes; that defendants claim that said property belongs to said board of regents and deny the trust set up in the complaint, and that said deed is a cloud upon and an injury to the right of plaintiffs and other members of the Methodist Episcopal Church South of the state of Oregon, and that Corvallis College is unwilling to execute said trust without a judicial determination that said deed has no force or effect. And it prays for a decree on behalf of plaintiffs and the other members of the Methodist Episcopal Church South of the state of Oregon, establishing said trust in their favor and declaring said deed null and void, and compelling Corvallis College to execute said trust, and enjoining the other defendants from in any way interfering with the same, and for general relief.

A demurrer was interposed to this complaint by the defendants. The demurrer was sustained by the court below, and plaintiffs standing by their complaint, a decree was entered dismissing the complaint. Plaintiffs appealed to this court, which reversed the decree and remanded the cause for further proceedings: *Liggett et al.* v. *Ladd et al.* 17 Or. 89 (21 Pac. Rep. 133). At the November term, 1889, of the circuit court for Benton County, the plaintiffs were permitted to file an amended complaint, which is in all respects the same as the original except that it changes Corvallis College from being a defendant, as in the original complaint, to a plaintiff in the amended complaint, and instead of the allegation that "Corvallis College is unwilling to execute said trust without a judicial determination that said deed has no force or effect" in the original complaint, it alleges that "said Corvallis College, on account of said deed, is prevented by said pretended board of regents from executing its said trust and from exercising and performing its rights, duties, and powers as the agricultural college of the state of Oregon"; and the prayer for relief contains the additional clause, "restoring to said Corvallis College as the agricultural college of the state of Oregon, its right to

possess and use said agricultural farm." This pleading was filed under an order granting leave generally to file an amended complaint and upon no special showing; and when the attention of defendants was called to it they filed their motion to strike it from the files, which motion was as follows: "Come the defendants and move the court to strike out the paper filed in the above-entitled suit, entitled an amended complaint, for the reason that the same sets up a new cause of suit in favor of Corvallis College and against these defendants not contained or set forth in the original complaint, and in effect substitutes a cause of suit in favor of Corvallis College and against these defendants for a different cause of suit set forth in the original complaint, and that such a change cannot be permitted or allowed under an order granting leave to amend the complaint." This motion was denied, and the action of the court in denying the same and permitting the amendment is one of the errors relied upon by appellants.

The defendants then demurred to the amended complaint assigning the following grounds: 1. Said amended complaint does not state facts sufficient to constitute a cause of suit. 2. There is a misjoinder of causes of suit and of parties plaintiff in this, that there is therein joined a cause of suit in favor of the Methodist Episcopal Church against these defendants to have a decree of this court that the real property described in the amended complaint is held in trust for said church, with a cause of suit in favor of Corvallis College against these defendants to set aside a deed described in the amended complaint made by the trustees of said college to these defendants, which causes of suit are improperly united in said amended complaint. 3. That there is therein a defect of parties plaintiff. 4. There is therein a defect of parties defendant that the following members of the board of trustees of said Corvallis College mentioned in said amended complaint, to wit, R. L. Buchanan, J. B. Lee, J. R. N. Bell, E. B. McElroy, J. W. Applewhite, B. F.

Burch, A. Cauthorn, B. L. Arnold, M. Jacobs, and James A. Cauthorn, ought to be parties defendant to this suit." This demurrer was overruled by the court, and defendants filed their answer. The cause was then transferred to Multnomah County for trial.

Corvallis College was established by the Methodist Episcopal Church South of Oregon in 1865, and incorporated August 22, 1868. July 2, 1862, the congress of the United States granted to this state ninety thousand acres of land for the purpose of establishing an agricultural college, and the act provided that said land should be sold and the money arising therefrom should continue a perpetual fund, the interest of which should be invariably appropriated by the state to the endowment, support, and maintenance of at least one college where the leading object should be, without excluding other scientific and classical studies, and including military tactics, to teach such branches of learning as are related to agriculture and the mechanic arts in such manner as the legislature might prescribe.

October 27, 1868, the legislative assembly of Oregon by an act appointed commissioners to locate the lands to which the state was entitled under the grant of congress for agricultural purposes, and also provided that until other provisions were made, Corvallis College should be designated and adopted as the agricultural college, in which all students sent thereto under said act of the legislature should be instructed in all the arts, sciences, and other studies, in accordance with the requirements of the act of congress making such donation. Said act of the legislature was not to be binding until the trustees of said college should adopt a resolution agreeing on their part to faithfully carry out the provisions of said act.

October 21, 1870, the legislative assembly of Oregon passed another act, entitled "An act to permanently locate the agricultural college of Oregon," which provided that Corvallis College in Benton County is hereby designated and permanently adopted as the agricultural

XXIII. OR.—3.

college of the state of Oregon, in which all students sent
under the provisions of law should be instructed in
accordance with the provisions of the act of congress
of July 2, 1862. A board of commissioners was also
appointed to prepare a plan for the instruction and edu-
cation of the students in said agricultural college. The
act also provided that the board of trustees of Corvallis
College might accept the provisions of said act within
thirty days after its passage by adopting a resolution
agreeing to be bound by the same, and file the same with
the secretary of state; and if not so adopted within that
time the said college should be deemed to have rejected
the same. The board of trustees of the said college, on
the twenty-ninth day of October, 1870, adopted resolu
tions accepting the provisions of said act and agreeing
to be bound by the same, which resolutions and accep-
tance were filed with the secretary of state on the second
day of November, 1870.

January 22, 1871, a subscription list was circulated at
Corvallis and elsewhere in Benton County, with the fol·
lowing agreement: "We, the undersigned, do agree to
pay J. C. Avery, G. B. Smith, B. R. Riddle, J. S. Palmer,
and Joseph Emery (committee appointed by board of
trustees) the amounts opposite our names, in United
States gold coin, for the purpose of purchasing an agri-
cultural farm for the use of Corvallis College, one half
to be paid on demand, and the balance on or before the
first day of January, 1872." Four thousand nine hundred
and sixty-three dollars and fifty cents was subscribed for
this purpose, and on the seventeenth day of April, 1871,
in consideration of $4,500, so subscribed, George A.
Roberts and Elizabeth Jane Roberts, his wife, duly bar-
gained, sold, and conveyed the real property, the title to
which is involved in this suit. The deed contained the
provision mentioned heretofore. It appears that there
were two mortgages given by the said college to secure
the unpaid subscription to this fund, amounting when
paid in 1888 to about $1,800. June 3, 1876, Corvallis Col-

lege filed supplementary articles of incorporation in addition to those filed October 2, 1868, as follows: "Add to the article 2, 'and with full power and authority to make, execute, and deliver checks, promissory notes, and bills of exchange, for the purpose of paying the debts of said institution and purchasing property necessary for the same, and to make, execute, and deliver deeds and mortgages to all or any of the property of said institution when the same shall be sold or mortgaged, and to sell any and all property belonging to said college, when the same may be deemed unsuitable, and to purchase and hold other property of any name or nature, necessary and suitable to the complete success and purpose of said institution, not exceeding the sum of five hundred thousand dollars.' Add to article 3 the following, to wit: 'The present estimated value of the property of said institution at Corvallis is thirteen thousand dollars, and its sources of revenue are appropriations of the legislature of Oregon and the proceeds of lands donated by the congress of the United States, and interest on the money arising from said sales and rents of the property of said college.'" These amended articles were executed by nine trustees, duly appointed by the Methodist Episcopal Church South, at the annual session held at Albany, Oregon, in September, 1875.

Corvallis College continued to hold this property, the title to which is involved in this suit, till the twentieth day of February, 1886, when the same was conveyed to the board of regents of the agricultural college of the state of Oregon, in consideration of one dollar, and the further consideration of a resolution duly presented to and regularly adopted by the board of regents of said Corvallis College at a special meeting of said board of regents held at Corvallis, Oregon, on the fifth day of February, 1886, which resolution authorized, empowered and directed J. B. Lee, as the president of said board of regents of said Corvallis College, and James A. Cauthorn, as secretary thereof, to make, execute, and deliver this

deed for, in behalf of and in the name of and under the
corporate seal of said corporation, the party of the first
part, and in pursuance of an act of the legislature of the
state of Oregon, approved February 11, 1885, and en-
titled "An act to confirm the location of the state agricul-
tural college at Corvallis, in Benton County, Oregon, and
to provide for the maintenance and government thereof,
and also in pursuance of another act of the legislature of
the state of Oregon, approved November 21, 1885, and
entitled 'An act to amend an act entitled an act to confirm
the location of the state agricultural college, at Corvallis,
in Benton County, Oregon, and to provide for the main-
tenance and government thereof,'" the said party of the
first part has bargained, sold, aliened, released, conveyed,
and confirmed, and by these presents does hereby bargain,
sell, alien, release, convey, and confirm unto the said
party of the second part, provisionally on behalf of the
state of Oregon, that certain agricultural college farm
situated in Benton County, Oregon.   This conveyance
was made in pursuance of the following proceedings had
in the general conference of said church, to wit: Sep-
tember 3, 1884, the Columbia conference of the said
church met at Dayton, Washington, and there was pre-
sented the action and report of a special committee of
the board of trustees of Corvallis College, held at Cor-
vallis, August 9, 1884, which committee had made a
detailed statement of the condition of the title of the
said college farm and recommended that the said prop-
erty be conveyed to the state, if the legislature would
materially assist in providing for the chair of mechanic
art.   There was also presented to the said conference
the report of another special committee of the said board
of trustees of the said college, held at the same meeting
of the said board, recommending that steps be taken to
erect a substantial brick building on the college farm.
The conference thereupon resolved, "that the board of
regents be urged to raise $25,000 in money or *bona fide*
subscriptions for the erection of a college building on

said college farm before the next session of the legisla-
ture.   That in the event this amount cannot be raised,
the board of regents is hereby directed to ask the legis-
lature of the state at its next session to dissolve the com-
pact existing between the board of regents of the Cor-
vallis College and the state of Oregon, to take effect at
the close of the present scholastic year." At a special
meeting of the trustees of Corvallis College held January
29, 1885, it was resolved, "that the mandate of the con-
ference be complied with." The annual session of the
Columbia conference of the said church held at Albany,
Oregon, September 10, 1885, adopted a resolution declar-
ing in effect that no change should be made by the trus·
tees of said college affecting its rights or standing as the
agricultural college of the state of Oregon.   After the
tender of the college farm to and its acceptance by the
state, the citizens of Corvallis and Benton county donated
the necessary funds and erected a college building on the
said farm of the value of $25,000.   On the twenty-fifth
day of April, 1887, a committee of the board of trustees
of Corvallis College served a written notice upon the
chairman of the building association of Corvallis and all
concerned not to enter upon the agricultural college
farm or to interfere with or encroach upon any of the
property or rights claimed by said college.

MOORE, J. (after stating the facts as above).—The
first objection raised by the appellants is to the amend-
ment of the complaint.   When the suit was commenced,
Corvallis College was made a party defendant.   In the
amended complaint Corvallis College was made a party
plaintiff.   The original complaint alleged that "Corvallis
College is unwilling to execute said trust without a
judicial determination that said deed has no force or
effect." The amended complaint struck out this allega-
tion and inserted the following in lieu thereof, to wit:
"Said Corvallis College, on account of said deed, is
prevented by said pretended board of regents from

exercising and performing its rights, duties, and powers as the agricultural college of the state of Oregon." And the amended complaint also, in addition to the original, prayed as follows: "And restoring to said Corvallis College as the agricultural college of the state of Oregon, its right to possess and use said agricultural farm." Appellants claim that these amendments substantially change the cause of suit. The court may allow an amendment of the pleading, to strike out and also to add the name of a party: Hill's Code, § 101. Hence there was no error in allowing a change of Corvallis College from a party defendant to a party plaintiff. Did the change of the original allegations substitute another cause of suit in the amended complaint? In the original complaint the allegation is that Corvallis College is unwilling to execute the trust without a judicial determination that said deed has no force or effect; that is, Corvallis College is willing to execute the trust as soon as it can be adjudicated that said deed is void. In the amended complaint it is alleged that Corvallis College is prevented, on account of said deed, from executing the trust.

"If the same evidence will support both complaints, and the same measure of damages will apply to both, the change is an amendment and not a substitution of another cause."—*Lumpkin* v. *Collier*, 69 Mo. 170. Applying this rule to these complaints, we find that the same evidence would support both. Testimony showing that Corvallis College is willing to execute the trust would support both complaints. It was on account of the said deed, by the allegations of the original and amended complaint, that the college was prevented from executing the trust. The prayer for relief asks for more in the amended than in the original complaint; but the prayer upon the original complaint might have asked under the allegations of the bill that said farm be restored to Corvallis College. The amendment, then, did not add or substitute another cause of suit, and was not a substantial change of the pleading.

Corvallis College was incorporated to hold property in trust for the Methodist Episcopal Church South in the state of Oregon, "for the support and spread of the Christian religion," and to endow, build up, and maintain a strictly literary institution for educational purposes. The state said to this college, if you will add to your course of studies and teach such branches as are required by act of congress of July 2, 1862, the agricultural college shall be permanently located at Corvallis and under the control of said college. The college agreed to this proposition, enlarged its course of studies, and began to teach the branches required. No college by the name of the agricultural college was in fact established. Corvallis College remained the same after as before the adoption, except its course of studies was enlarged. This was the condition of the college at the time the deed from Roberts and wife was made to it, April 17, 1871. When the fund was raised with which the property was purchased, the subscription list declared it to be "for the purpose of purchasing an agricultural farm for the use of Corvallis College." What was the intention of the donors with reference to the title, and whom did they expect would be benefited thereby when the deed was made? Was it the college or the church? The intention of the donors ought to have great weight in determining who was the real owner, or the party to be benefited by the conveyance of this property: Perry on Trusts, § 727.

Plaintiffs claim that inasmuch as the articles of incorporation provide that this college was incorporated for the purpose of holding property in trust for the church, any conveyance made to the college was in trust for the church, and that it could not take or hold property in any other manner than in trust for this object. The object of the corporation, as stated in its articles, was not only to hold property in trust for the church, but also "to endow, build up, and maintain a strictly literary institution for educational purposes."

The law of the state in force at the time this college was

incorporated provided that the corporation should have power "to purchase, receive, possess, and dispose of such real and personal property as may be necessary or convenient to carry out the object of said corporation": 2 Hill's Code, § 3299. This college could take and hold property in trust for the church, but did this specification in its articles of· incorporation limit the power of the college in holding property? Could it take and hold property in no other manner than in trust for the church? In *Liggett et al.* v. *Ladd et al.* 17 Or. 89 (21 Pac. Rep. 133), Judge LORD, in the dissenting opinion, defines an endowment, and holds that this college could take and hold property, real and personal, for the purpose of an endowment, independent of that which it might hold in trust for the church. We think there can be no question as to this conclusion. The articles of incorporation did not prohibit the college from holding property in its own right and for its own use and benefit. The object for which the college was created was as much for the purpose of endowing and building up a literary institution as it was for holding property in trust for the church. In order to endow, build up, and maintain a literary institution it became necessary to take and hold property in its own right. The articles of incorporation being silent upon this question, Corvallis College had the power to make all such contracts, and to purchase and hold all such real property as was necessary and usual in the course of business, as a means to enable it to attain the object for which it was created: Ang. & A. Corp. § 271.

The subscribers to this fund, when they made this donation to purchase this farm, understood it to be for the use of the agricultural college. They knew that Corvallis College could hold property in trust for the church, but when this property was conveyed to the college no provision was made for holding it in trust. May it not be then safely said that the subscribers to this fund also knew that this college could hold property independent of the church, and that these subscriptions

were made and the money obtained because the title was
to be in the college? These donations were not made
for the use or benefit of the church. The testimony goes
to show that the subscribers so understood this, and the
Roberts' deed by not naming the church as the *cestui que
trust* confirms this theory. The church has not now and
never had any possible interest in this property except
the right to appoint trustees. The agricultural college
farm was the property of its creature, the Corvallis
College, and the church could govern it only so far as its
influence might be felt through the trustees appointed by
the conference. The deed conveyed this property to
Corvallis College upon conditions, to be used in connec
tion and for the purpose of the agricultural college of
the state of Oregon. At the time this conveyance was
made, the donors understood Corvallis College to be the
agricultural college of the state of Oregon. It is true no
such corporation existed *eo nomine,* but all parties treated
the donations, purchase, and conveyance of the Roberts'
tract as if it did in fact exist. The beneficial interest
then was for that part of Corvallis College then known
or understood to be the agricultural college of the
state of Oregon. The church never claimed to own
this farm. It said so at the Dayton conference. It
realized the title was in Corvallis College, and that there
was no trust in favor of the church. At this conference
the church adopted resolutions instructing the trustees
to convey this property to the state of Oregon if the sum
of $25,000 could not be raised to erect suitable buildings
before the next meeting of the legislature of the state.
These resolutions were the solemn, deliberate acts of the
conference, presented and adopted in good faith. This
conference said: "We endorse the action of the board
of trustees in tendering the agricultural college farm to
the state." This conference also instructed these trus-
tees to ask the legislature to dissolve the compact then
existing between the college and the state. The church
had nothing to do with this compact in the first place,

it was made between the state and the college, not
between the state and the church.   This college, under
its articles of incorporation, "to endow, build up, and
maintain a strictly literary institution," had a will of its
own, which it could exercise at any and all times with
reference to its own property whenever it was for the
best interest of the college.   These trustees, in the
abundance of caution, asked the advice of the church
upon this question, and the church, in conference, said,
dissolve the compact and convey the property to the
state.   The church gave its advice and the trustees
acted in accordance therewith.   The compact was, by the
act of the legislature of Oregon upon the petition of the
college acting under the advice of the highest legislative
power of the church, dissolved forever   How then could
the church or any of its members complain when every
thing done was in accordance with their will and wish ?

It is urged by plaintiffs that as the Dayton resolutions
authorized a dissolution of this compact by the state and
college, to take effect at the close of the scholastic year,
June, 1885, and the legislature by the act of February
11, 1885, prescribed another and different time, to take
effect when the citizens of Benton County had erected
upon the college farm brick buildings, provided the same
were completed on or before January 1, 1887, and free
from all liens and incumbrances, there was never what
the law calls the *aggregatio mentium* between the parties
necessary to dissolve the compact, and this acceptance
by the state was never accepted or adopted by the church
or by the college.   The acceptance by the state may
never have been adopted by the church, but the church
never had any interest in the agricultural department of
Corvallis College, except so far as it could influence the
same by the appointment of trustees.   This compact
having been made between the state and college, and not
between the state and the church, the college approved
the conditions imposed by the state and agreed to them;
and as this branch of the college was in its sole custody

as an endowment under its articles of incorporation, it follows that there was an *aggregatio mentium* between the parties to the contract, and such an agreement and meeting of the minds of the parties at interest as the law contemplates.

February 11, 1885, this compact was dissolved. The state agreed to accept the farm. It attached a condition to the acceptance, which required brick buildings to be erected thereon; and the citizens of Benton County, who would not aid in the building up of a religious institution to draw money from the state treasury in violation of the plain provisions of the state constitution, were ready and willing to aid the measure. It mattered not when the deed was executed conveying this property to the state. In equity and good conscience it was made February 11, 1885, at the time the parties agreed to this proposition, and from that time on the college stood there under its agreement day by day, tendering this deed to the governor of the state, who was authorized to accept the same when the conditions were complied with on the part of the citizens of Benton County. The citizens commenced at once to comply with the requirements, and they had rights as citizens of the state which attached, subject to being defeated if the buildings were not completed within the time; and when the buildings were so erected the college was obliged to convey the property to the state, or to the board of regents named in the act.

The Albany conference of this church, September 10, 1885, seven months after the state and college had entered into this new contract, and after the citizens of Benton County had acted in the matter, passed resolutions rescinding the Dayton resolutions of the year before. Was this new contract entered into between the state and college of any advantage or benefit to the latter, and was it such a contract as it could make? The Columbia conference of this church, held at Dayton, Washington, September 3, 1884, adopted the following: "In order to furnish additional room for the professors and students, and meet

the growing demands of the state, we find it to be imper-
atively necessary that a new building be erected, to cost,
say, twenty-five thousand dollars.   Longer delay in this
matter will imperil the very existence of the institution.
Moreover, the church is unable to erect such a building
without the hearty coöperation of the citizens of Benton
County."   The college then attempted to raise the neces-
sary means from the citizens of Benton County, but they
refused; and when the college found it could not erect
the buildings, and that for lack of room it would be
obliged to ask a dissolution of its compact with the state
and a surrender of the agricultural department, and thus
forfeit this land to the original donors of the fund, it said
to the state:   "This agricultural department has become a
burden to the college.   It can no longer comply with the
terms of the compact by reason of the failure to erect
the necessary buildings.   The church cannot aid us, and
the citizens of Benton County will not.   If it surrenders
this department and fails to use the college farm in con-
nection and for the purpose of the agricultural college of
the state of Oregon, the title will revert to the donors of
the fund.   If you will take this property and maintain
an agricultural college and release us so that this college
can return to a strictly literary institution, the college
farm shall be transferred to the state, or to such board
as the state may select to manage the same."   To this
the state agreed.   The church had no cause to complain
since it had recommended this course; the college had no
cause to complain because it was to the advantage of the
same.   It was incorporated as a strictly literary institu-
tion.   It had attempted to conduct an institution the
leading object of which was military tactics, and such
studies as related to agriculture and the mechanic arts
— studies foreign to its articles of incorporation.   It was
necessary for this college to return to its original object
— a strictly literary institution—when it could no longer
furnish the necessary accommodations for the pupils sent
it by the state, or who desired to attend that department

known as agricultural, and as a means to this end it must surrender the agricultural department. It was such a contract as the college could make, as it was for its benefit. "A corporation can make no contract forbidden by its articles of incorporation, nor any contract which is not necessary, either directly or indirectly, to enable it to answer that purpose."—Ang. & A. Corp. § 256. The college was not prohibited from making such a contract, and it was directly necessary that it should do so in order to return to its original object.

The question is raised whether the board of regents of the agricultural college of the state of Oregon was such a body as was capable of taking and holding the title to real property. This court in *Dunn* v. *University of Oregon*, 9 Or. 357, held that the board of directors of the University of Oregon, created by the act of October 19, 1872, of the legislature, entitled "An act to create, organ ize, and locate the University of the state of Oregon," was a corporation. This board of directors of the state university was created by the legislature of the state in the same manner as the act creating the board of regents of the agricultural college. The board of regents of the agricultural college of the state of Oregon, then, was and is such a corporation, and it is capable of taking and holding the title to real property.

Corvallis College being, then, a proper party, the property belonging to the college, the board of regents being capable of taking and holding the title to real property, the conveyance being in the interest and for the benefit of the college, to pass the title, the only question remaining, then, is, was the conveyance executed in the manner prescribed by law? It is claimed by plaintiff that the action of the trustees of January 29, 1885, at which the resolution was adopted recommending that "the mandate of the conference be complied with," was a nullity and had no effect upon the corporation because it was not concurred in by an alleged majority of the trustees. It appears by the record of the meetings

of the board of trustees of this college that at the annual meeting of said board, held June 8, 1885, the minutes of the special meeting at which the resolution was adopted were approved, thus ratifying and correcting any and all errors if any existed.   It is claimed by plaintiffs that the order from the president of the board of trustees to the secretary of said board, directing him to call a meeting of the trustees on February 5, 1886, did not specify the object of the meeting, and that the words "The object of the meeting is to consider the transfer of the college farm," written with a pencil, is a different handwriting from the original. At the meeting held February 5, 1886, a resolution was adopted authorizing the president and secretary of the board of trustees to execute the conveyance of the college farm to the board of regents of the state agricultural college.   There is no evidence that this statement of the object of the meeting was not made in the presence of the president and with his knowledge and consent, even if it were made by a different person.   At the meeting held February 5, 1886, when these officers were instructed to execute the deed, it was only carrying out the contract entered into between the state and the college; and the conveyance by these officers was ministerial only, as they derived their authority from the contract of February 11, 1885, made between the state and college.   This deed was one which the college ought in equity and good conscience to have made under its contract with the state, and having done what it ought to do, the college has no cause for complaint.   It follows, then, that the decree should be reversed and the complaint dismissed, and it is so ordered.

BEAN, J., having participated in the trial below did not sit in this case.