Argued November 15, 1951, affirmed as modified February 14, petition for rehearing denied March 5, 1952

# MERIT *v.* LOSEY ET AL.

240 P. 2d 933

*Hugh B. Collins* and *Warren G. Lesseg,* of Medford, argued the cause and filed a brief for appellant.

*Edward C. Kelly,* of Medford, argued the cause and filed a brief for respondent Pauline B. Losey.

Before BRAND, Chief Justice, and HAY, ROSSMAN, and LUSK, Justices.

HAY, J.

This is a suit in which plaintiff, Thomas E. Merit, sought a declaratory judgment to determine the respective legal rights, status, and legal relations of himself and each of the defendants under a contract of sale of real property.

The complaint alleges that, prior to March 30, 1945, plaintiff and defendant Pauline B. Losey had become betrothed; that, on said date, in contemplation of marriage with said defendant, plaintiff procured defendants Charles T. Nahss and Henrietta Nahss, as vendors, to enter into an agreement in writing with plaintiff and defendant Losey, as vendees, for the sale of certain real property in Jackson county, Oregon, described as lot 4 and the north half of lot 6, Springbrook subdivision; that the vendees in such agreement were named as Thomas E. Merit and Pauline B. Merit, and described as husband and wife; that the agreed purchase price was $3,250, payable $600 on execution of the agreement and the remainder, including interest at 6 per cent per annum, in monthly installments of $30; that plaintiff paid the $600 down payment from his own funds, and that thereafter he made all the monthly payments required by the agreement; that defendant Losey contributed no part of such payments,

it being understood between them that, in contemplation of their proposed marriage, she should not be required to do so; that defendant Losey broke her engagement to marry plaintiff; that she contends that she has become vested with an undivided one-half interest in said real property, has demanded that plaintiff purchase such interest from her, and has threatened, if he will not do so, to institute a suit against him for partition of the property, although she knows that plaintiff entered into said agreement to purchase said property solely in contemplation of marriage with her; that, by reason of the premises, defendant Losey has no right in the property; and that, if defendants Nahss consent, her name should be canceled from the contract, or that she should be required to quitclaim her interest in the property to plaintiff. A copy of the contract of sale is attached to the complaint as an exhibit.

The defendants Nahss answered, admitting the execution of the contract of sale and the payment of the sums due thereunder to and including the installment payment due in September, 1947, but denying the remaining allegations of the complaint on information and belief. For an affirmative defense they alleged that they have no knowledge as to whether Thomas E. Merit and Pauline B. Losey are husband and wife; that they, as vendors, have fully complied with the contract of sale, and, under the terms thereof, have executed a warranty deed in favor of Thomas E. Merit and Pauline B. Merit, husband and wife, and placed same in escrow with an escrow agent; that all payments under said contract have been made promptly; and that they "stand ready and willing to comply with any Order of the Court made herein which is not contrary to" their interests.

Defendant Pauline B. Losey answered the complaint, admitting the execution of the contract of sale, and that, at the time of the execution thereof, plaintiff paid $600 to defendants Nahss as a down payment upon the purchase price, and denying generally all other allegations. For an affirmative answer, she alleged that, on or about June 27, 1936, she and plaintiff commenced living together as husband and wife at Colorado Springs, Colorado, which is a common law marriage state, but that they did not go through any ceremony of marriage; that, following June 27, 1936, plaintiff and she lived together continuously as husband and wife, first in California and subsequently in Oregon; that they jointly owned, possessed and held real and personal property as joint venture property in California as husband and wife; that, prior to coming to Oregon, they had accumulated joint venture funds, from which they purchased the real property described in the complaint and certain personal property; that all "of said joint and community funds" has been acquired through their joint efforts, and that the real and personal property last mentioned was acquired "from said joint and community funds acquired during the time since they had commenced living together as husband and wife"; that all payments made under said contract toward the purchase price of said real property until about April 1, 1947, were made "from the joint and community funds of said parties"; that, by reason of the facts in said affirmative answer alleged, plaintiff and she purchased and held said real property as tenants in common. She prayed for a decree adjudging that plaintiff and she are such tenants in common, subject to the rights of the defendants Nahss under said agreement of sale.

A general demurrer by plaintiff to this answer was

overruled by the court, whereupon plaintiff filed a reply comprising a general denial of the allegations of the affirmative answer and counterclaim, and three separate affirmative replies. The latter, in effect, alleged that, during the period of time when plaintiff and defendant Losey lived together, and particularly for several years prior to March, 1947, their relationship was intimate and confidential; that said defendant had represented to him that she would marry him, that he confidently expected to marry her, and that she exercised great influence over his actions; that, at all times during said period, he endeavored to please her and to comply with her wishes; that, in consequence of her repeated urging and by reason of her influence over him, and in reliance upon her representations that she intended to marry him, he contracted to purchase the land involved herein in the names of defendant Losey and himself as wife and husband, and made, with his own funds, all the payments upon the purchase price thereof that had been made prior to the time when they ceased to live together.

Thereafter plaintiff filed a supplemental complaint, alleging that, since the filing of the original complaint and continuing to and including the month of January, 1949, he had paid the monthly installments of the purchase price due under said contract of sale.

After a hearing, the court made findings of fact and conclusions of law in favor of defendant Losey, and, based thereon, on March 9, 1950, entered its decree declaring that plaintiff Thomas E. Merit and defendant Pauline B. Losey are the equitable owners in fee simple of the real property herein involved, subject to compliance with the contract of sale between them and defendants Nahss. Plaintiff appeals.

As the defendants Nahss are, in effect, simply

stakeholders in the transaction, we shall refer to plaintiffs and Mrs. Losey as "the parties", and to Mrs. Losey as "defendant". The parties first became acquainted at San Diego, California, in 1935. Defendant at that time was married, although she had procured an interlocutory decree of divorce in a California court. Plaintiff had been married twice, but had been divorced from his first wife and was living apart from his second. The parties began living together, ostensibly as husband and wife, in about the month of June, 1936. Each of them testified that their association was entered into in contemplation of future marriage, although no definite time for such marriage had been agreed upon. Defendant secured a final decree of divorce on August 14, 1936. A final decree dissolved plaintiff's marriage in either April or May, 1937. Defendant testified that thereafter she frequently urged plaintiff to marry her, but that he always put her off with one excuse or another and finally told her that they were as much married as a piece of paper could make them. They cohabited, she says, ostensibly as husband and wife, at San Diego, California, Seattle, Washington, Klamath Falls, Oregon, Oakland, California, Truckee, California, Yuba City, California, and Los Angeles, California, and finally settled in or near Medford, Oregon, in 1944, still unwed.

Prior to the purchase of the real property hereinafter mentioned, both parties worked for wages, plaintiff fairly continuously, and defendant a considerable part of the time. Whatever moneys they earned they placed in a strong box, which was accessible to both. Money was withdrawn from this box by either of them from time to time to pay current bills. They kept no account of such moneys. They never had any bank account.

They held themselves out to their associates, friends and relatives as husband and wife, and, jointly as such, rented property, entered into business undertakings, purchased war bonds, and filed income tax returns. During a part of the time of their association, plaintiff carried insurance—whether life or accident does not appear—with defendant, named as his wife, as beneficiary.

Both parties testified that the $600 cash down payment on the executory contract of sale and purchase of real property was money taken from the strong box. The real property consists of approximately eight acres of land, and is adapted to agricultural uses. After they purchased the land, the parties bought two cows, and some chickens and turkeys, paying therefor with money taken from the strong box. The parties took up their residence upon the purchased real property, and defendant cared for the property as well as for the livestock. On alternate days, plaintiff would be absent on duties connected with his employment, but when he was home he did the milking. The monthly installments upon the purchase of the real property, subsequent to the down payment, were made from moneys earned by plaintiff as wages.

About March 15, 1947, plaintiff told defendant that she had been working too hard and was run down, and insisted that she should take about a month's vacation. She had friends in Eugene, Oregon, and arranged to visit them. Plaintiff gave her $20 for bus fare, and told her to stay in Eugene until she heard from him, and said that he would either write her or see her, probably before the month was up. It appears that defendant was at that time suspicious that plaintiff was having an affair with another woman, and, instead of staying away for a month, returned to Medford within a few

days. She testified that, on reaching the home, she found evidences from which she concluded that another woman had in fact been in residence there in her absence. Thereupon, acting, as she said, upon the advice of an attorney, she made an arbitrary division of the personal property, including money and war savings bonds, took what she considered to be her share, and returned to Eugene, where she remained. Within two weeks thereafter, she had a nervous breakdown, in consequence of which she was unable to work for about four months, and was obliged to spend for doctor's bills all the money which she had taken from the home.

Plaintiff testified that, about three months after defendant left him, he brought to his home the woman of whom defendant had been suspicious, and cohabited with her there until she had secured a divorce from her husband, a period of about three months, after which he married her.

At the opening of the hearing, the court permitted defendant to amend her affirmative answer, changing her allegations respecting community funds and property owned and held by the parties by substituting for the word "community" the words "joint venture". This is assigned as error. In support of such assignment, it is argued that plaintiff came to the hearing prepared to try an issue of law made by the pleadings respecting the ownership of the funds expended toward the purchase of the real property, the answer alleging and the reply denying that such were community funds. The proposed amendment was objected to on the ground that it substantially changed the cause of suit, and was within the inhibition of § 1-1006, OCLA.

█ We have held that liberality should be exercised by trial courts in permitting amendments when it is

evident that they will be in furtherance of justice, and particularly amendments by a defendant. *Pacific Co. v. Cronan,* 82 Or 388, 392, 161 P 692; *Nelson v. Smith,* 157 Or 292, 298, 69 P2d 1072. The amendment in the case at bar was, in our opinion, tendered before trial. Trial, in this connection, means trial or a hearing upon issues of fact. *State v. Pacific Live Stock Co.,* 93 Or 196, 200, 182 P 828; *Hurst v. Merrifield,* 144 Or 78, 84, 23 P2d 124. It is true that the parties had gathered in the court room for the hearing, but the hearing had not begun. The amendment was proper, and was in furtherance of justice, within the rule that amendments to pleadings before trial should be allowed with great liberality if they are essential to a fair trial on the merits. *Swift v. Mulkey,* 14 Or 59, 63, 12 P 76; *Eaid v. National Casualty Co.,* 122 Or 547, 554, 259 P 902; *Nelson v. Smith,* supra, 157 Or 292, 298, 69 P2d 1072. Even if it substituted a new cause of action for the original one (which we think it did not), having been made before trial its allowance was within the discretion of the court. *Liggett v. Ladd,* 23 Or 26, 38, 31 P 81; *Willey v. Herrett,* 66 Or 348, 351, 133 P 630; *Zimmerle v. Childers,* 67 Or 465, 470, 136 P 349. If its allowance took plaintiff by surprise, he should have requested a continuance.

The trial court found that the parties had entered into a joint adventure. This is assigned as error.

■ Plaintiff insists that the mere fact that they acquired the property while in unlawful cohabitation did not have the effect of creating in them a partnership or joint interest therein, in the absence of a specific agreement that they should share in its ownership. Joint adventure is to be distinguished from both joint tenancy and tenancy in common. 48 CJS, Joint Adventurers, § 1; *Hathaway v. Porter Royalty Pool, Inc.,*

296 Mich 90, 295 NW 571, 576, 138 ALR 955, amended, 296 Mich 733, 299 NW 451, 138 ALR 967; *Pratt v. Martig*, 182 Minn 250, 234 NW 464, 465. In *Springston v. Powell*, 113 W Va 638, 169 SE 459, 460, it was held that the mere purchase of property by two or more persons, each contributing a portion of the purchase price, made them joint owners but not joint adventurers. Our view of the evidence is that the parties contracted to purchase the property as an incident to and in furtherance of their unlawful cohabitation. Plaintiff testified that it was their desire, when coming to Medford, to acquire a home. Defendant discovered the property through an advertisement in a newspaper, discussed with plaintiff the matter of acquiring it, contacted the real estate broker, inspected the property, and finally brought plaintiff out to view it. Plaintiff asked her if she thought she would be satisfied with the property and thought she could make a home there. She said she thought she could. She insisted on having "her name on the papers" for her protection. Plaintiff said that all payments on the purchase price were made by him. Defendant said that such payments were made from joint funds, to which both parties contributed. We are inclined to accept defendant's version, as did the trial court. No doubt plaintiff contributed more to the joint funds than defendant, as he was more regularly employed than she. But the evidence shows, we think, that they intended to hold the property together. The fact that the contract was made to run in both their names as vendees is in itself some evidence of such intention. Plaintiff says that he purchased the property in both their names in contemplation of marriage. But they had held themselves out as husband and wife for many years, and thereby had built up a facade of respectability which

both of them, at least up to the time of contracting to purchase the property, were desirous of maintaining. The purchase of the property resulted in no apparent change in their relations. In view of the evidence, our opinion is that the trial court erred in holding that the parties were joint adventurers.

Error is assigned upon the court's finding that any part of the purchase price of the real property was paid from either joint or community funds of the parties. As to community funds, the finding was erroneous. The parties never having been married, they did not acquire any community funds. In any event, the allegations of the answer respecting community funds were eliminated upon defendant's motion, and the court's finding thereon was apparently an inadvertence.

We do not pass upon the question of whether or not there was sufficient evidence to sustain the finding that the payments were made out of joint funds, as far as such finding covered payments made up to and including that made March 1, 1947. The evidence, however, is clear that, from March 15, 1947, when defendant withdrew from the liaison, to and including December 31, 1948, which was the date of payment of the last installment due prior to the hearing herein, all payments due under the contract were made by plaintiff from his own funds. These comprised 22 monthly installment payments of $30 each, or $660 in all.

■ It is argued that where a man makes a substantial gift to a woman with whom he is living in unlawful cohabitation, fraud and undue influence on the part of the woman are presumed, and she has the burden of proof that the circumstances attending the gift were fair and free from fraud. This is the general rule in

such cases. Its applicability to the facts in the present case, however, is not apparent, as there was not sufficient evidence, in our opinion, that plaintiff made or intended to make defendant a gift of an interest in the real property. His testimony was that defendant insisted upon her name being "on the papers" for her protection in case something happened to him. Her testimony, as we have stated, was that they purchased the real property with their joint funds. Plaintiff admitted in one place that their moneys were kept in a strong box; in another place he insisted that all the money that went into the box was his, and that he never saw any of defendant's wages; and in still another place he said merely that he didn't know that defendant's wages went into the box the same as his. The trial court accepted defendant's version of the facts, and in this we think he was justified by the evidence.

■ Plaintiff assigns error upon the court's finding that he, and not defendant, was the one who breached an agreement of the parties to marry. Each of the parties vigorously insists upon his own innocence and the guilt of the other in this connection. The evidence convinces us, however, as it did the trial judge, that, during their long period of cohabitation subsequent to plaintiff's divorce, either could have insisted upon their marriage, or, in default thereof, could have ended the liaison. Without going into the evidence in detail at this point, we will say simply that it satisfies us that the trial court's finding was correct.

■■ So far as the relief sought by plaintiff herein calls for a declaration that defendant has no rights in the real property and that her name should be stricken from the contract of sale, such relief is of equitable cognizance. The inclusion of defendant as a vendee

in the contract was a matter which arose out of and as an incident of the unlawful and meretricious cohabitation of the parties, and the dilemma in which plaintiff now finds himself resulted from wrongdoing in which the parties were at least *in pari delicto*. Plaintiff, in seeking the aid of equity to extricate him from such a situation, does not come into court with clean hands, and equity will not aid him. 30 CJS, Equity, § 93, note 88; *Reid v. Multnomah County*, 100 Or 310, 328, 196 P 394; *Slovanian L. & S. Assn v. City of Portland*, 111 Or 335, 356, 224 P 1098; *Blake v. Kimble et ux*, 120 Or 626, 630, 253 P 522; 2 Pomeroy, Eq. Jur., 5 ed, § 397 et seq. Nor will any court, whether of law or equity, permit a party to found any claim upon his own iniquity. 1 Am Jur, Actions § 16, note 7; *Smith v. Germania Fire Ins. Co. of N.Y.*, 102 Or 569, 574, 202 P 1088, 19 ALR 1444.

■ Although the unconscionable character of the transaction was not pleaded as a defense herein, the cause is heard *de novo* on appeal, and this court takes note of it as revealed by the evidence, and in respect thereof invokes the clean hands doctrine of its own motion. 30 CJS, Equity, § 97.

■ In this case, the contract described the vendees as husband and wife, and, if they had been such, on completion of the transaction they would have taken title to the land as tenants by the entireties. As they were not married in fact, it is apparent that they would not take such an estate. *Schafer v. Schafer*, 122 Or. 620, 627, 260 P 206, 59 ALR 707. One of the incidents of an estate by the entireties is that, upon the death of one of the parties, the title vests in the other, an incident wherein such title is similar to joint tenancy at common law. It has been held that either a joint tenancy or a tenancy in common, depending upon the intention

of the grantor, will result from a conveyance which apparently was intended to create an estate by the entireties but failed to do so because the grantees were not at the time legally married. 26 Am Jur, Husband and Wife, § 87, note 6. This court has held, however, that joint tenancy has been abolished in Oregon, and that "all persons having an undivided interest in real property are to be deemed and considered tenants in common, except where the right of survivorship is expressly declared." *Erickson v. Erickson,* 167 Or 1, 15, 115 P2d 172. The cited case holds, in effect, that express words are necessary to create a right of survivorship (Id p 21) and, hence, as applied to the factual situation in the present case, no right of survivorship, as an incident to tenancy by the entireties or otherwise, may be implied from the erroneous designation of the vendees as husband and wife. Under the circumstances, the designation of the parties as husband and wife must be regarded as mere descriptio personae, and may be ignored as surplusage, with the result that they took their interest in the realty as tenants in common. Annotation, 92 ALR 1420. Thus we reach, although by different reasoning, the same conclusion as that arrived at by the trial court.

■ As to subsequent payments, the parties undertook a joint and several obligation to the vendors to pay the unpaid portion of the purchase price in accordance with the terms of the contract. Plaintiff, having paid the whole of the installments which fell due between March 15, 1947, and December 31, 1948, to wit, $660, is entitled to contribution from defendant for the latter's proportionate share of such payments, viz., one-half thereof. Restatement, Restitution, § 85 and Comment e; 13 Am Jur, Contribution, § 35, note 11; 14 Am Jur, Cotenancy, § 43. And, in order to

enforce such contribution, he is entitled to an equitable lien upon the interest of defendant in said real property. 14 Am Jur, Cotenancy, § 44.

Plaintiff asserts that, if the trial court was not in error in holding that the parties were purchasing the property as tenants in common, then it erred in not holding that plaintiff has a right to contribution from defendant for one-half of all sums paid or to be paid by him in excess of his share of the purchase price. As to sums paid by him prior to the dissolution of the unlawful cohabitation of the parties, the court leaves them where it found them, and will not undertake to make an accounting between them.

A number of other errors are assigned, but, in view of our disposition of the case, they do not call for discussion.

The decree will be modified by adding thereto a declaration that plaintiff is entitled to contribution from defendant for her proportionate share, to wit, one-half of all installments of the purchase price of said real property which became due between March 15, 1947, and December 31, 1948, and which were paid by plaintiff, said payments aggregating $660, with legal interest thereon, and that plaintiff has a lien upon defendant's interest in said real property to secure payment of such contribution and interest.

In all other respects, the decree is affirmed. Neither party to recover costs.