Submitted on record January 19, affirmed September 10, 1971

MERIMAC CO., INC., *Appellant, v.* PORTLAND
TIMBER & LAND HOLDING CO., *Respondent.*

488 P2d 465

In Banc

HOWELL, J.

Plaintiff appeals from a decree (erroneously denominated a "judgment order") entered in favor of defendant in a suit filed by plaintiff to require the defendant to convey certain property to plaintiff.

The trial court entered findings of fact and conclusions of law that Reuben Lenske, an attorney

(who contended that he was the sole stockholder and representative of plaintiff) did not have authority to represent plaintiff, that plaintiff failed to carry the burden of proof, and that Lenske had "come into this Court of Equity with unclean hands."

The facts, for reasons which we will discuss subsequently, are extremely confusing and complicated. No brief was filed by the defendant. The plaintiff's brief sets forth various assignments of error, most of which raise procedural questions which do not go to the merits of the dispute and all of which are completely without merit.

1. The plaintiff contends the trial judge erred in denying plaintiff's motion to disqualify himself. The motion, which was made during the course of the trial, was not timely filed. ORS 14.260.

2. The plaintiff also contends the trial court erred in denying plaintiff's motion that the suit be dismissed without prejudice or, in the alternative, that "the suit be reheard with new evidence." Upon the conclusion of the trial on October 18, 1968, the trial judge announced his decision from the bench. The decree was not entered until June 18, 1969. The plaintiff's motion was made long after the conclusion of the trial. Obviously, the trial court acted within its discretion in refusing to dismiss the suit without prejudice after the trial was concluded. Neither did the trial court abuse its discretion in refusing to reopen the case to allow plaintiff to introduce "new evidence." *Arbogast et al v. Pilot Rock Lbr. Co.,* 215 Or 579, 595, 336 P2d 329 (1959).

3. The plaintiff contends that the defendant's answer should have been stricken because certain parties did not appear for depositions to be taken at a time

set by Lenske. One of the parties was involved in a trial at the time, and another was incarcerated in a federal penitentiary. This argument is also without merit.

The primary thrust of plaintiff's argument in this appeal is that it was entitled to a decree in its favor on the merits of this controversy, in which plaintiff seeks to require the defendant to reconvey certain property to plaintiff or, in the alternative, to grant plaintiff a judgment on a promissory note executed by defendant in favor of plaintiff.

The facts of this case are extremely unclear and confusing, but, generally, the record shows the following: Prior to December, 1961, Tony Fernandez, a tenant in a building owned by Reuben Lenske, was the defendant in a fraud action in which he was represented by Lenske, the president of plaintiff corporation. Two other creditors of Fernandez had large judgments against him for fraud, and involuntary bankruptcy proceedings were initiated against him in 1958. At that time Fernandez owned, or had an interest in, various properties including timber in Cowlitz County, Washington, known as the Green River timber; timber and land in Pacific County, Washington, known as the Lottie Bode property; the Fernandez residence; the Fernandez summer home; and some industrial property in Washington known as the California Way property. The California Way property and the Lottie Bode property are the only ones directly involved in the instant case.

According to Fernandez, Lenske told him while the bankruptcy was pending that it was possible for Fernandez to "buy back my own assets." Lenske proposed to use the plaintiff corporation "to put the

properties in" with the understanding that if a satis-
factory arrangement could be worked out, Lenske
would join Fernandez in the venture.

Lenske's offer to use plaintiff corporation in
this plan requires some explanation. In 1955, Lenske
prepared the necessary documents to incorporate Meri-
mac for a Mr. & Mrs. McDonald, who were engaged in
an interior decorating and home repair business. No
by-laws were prepared, and it is questionable if any
stock was ever issued. The McDonalds separated, and
Lenske said they told him he could use the corporation
"for whatever purposes I needed to use—or wanted to
use it for." In 1959 Lenske "decided to make use of
the corporation for myself." At various times Lenske
was president or secretary of the corporation, was
always the attorney for the corporation, and was "the
sole provider of the money." At one time a William
Leveton appeared as president of Merimac. He testi-
fied that he had no interest in the corporation, did
not recall attending any meetings, and that when he
was in Lenske's office on one occasion, Lenske told
him "he needed one more signature, he had one and
needed one more signature" and "I just loaned my
name." He could not recall how many documents he
signed as president.

Fernandez testified that it was agreed that after
Lenske, through Merimac, purchased the assets from
the trustee in bankruptcy, "I would end up with all
the properties, excluding Green River. He [Lenske]
was to get the Green River."

After completion of the negotiations by Lenske
with the trustee, the Lottie Bode timber, the Fernan-
dez residence, the Fernandez summer home, the Green
River timber, and the California Way industrial

property, all formerly owned by Fernandez, were conveyed to plaintiff corporation. Apparently Lenske paid $150,000 or $167,500 for the properties.

The trustee's deed to plaintiff was dated August 21, 1959. On May 25, 1961, the Supreme Court of Washington handed down a decision affirming the trial court's finding that the conveyance from Lottie Bode to Fernandez of the 840 acres of timber land was a forgery, and the conveyance was set aside. *Hallin v. Bode,* 58 Wn2d 280, 362 P2d 242 (1961).

Subsequently, by some means, the defendant corporation, through Fernandez and Carl Pratt, an associate of Fernandez, was able to repurchase a portion of the Lottie Bode timber.

Apparently Fernandez was not an officer in the defendant corporation before his bankruptcy; however, according to Lenske, Fernandez always had a managerial interest. Later, Fernandez became president.

In December, 1961, the plaintiff and defendant agreed to an arrangement whereby plaintiff conveyed the California Way industrial property to the defendant in exchange for a note and mortgage for $30,000 and a conveyance by defendant to plaintiff of 120 acres of the Lottie Bode property.[1] In May, 1962, another suit between defendant and the estate of Lottie Bode was instituted in the Superior Court for Pacific County, Washington. In that suit, the Bode estate contended that plaintiff corporation and Lenske and Fernandez had conspired to defraud Lottie Bode of

---

[1] Apparently Lenske and Fernandez also had an oral agreement that Lenske would reconvey the Bode property to the defendant after Lenske received "a fair amount above the $30,000" from the sale of timber on the property.

the property involved, and that the conveyance by Lottie Bode to defendant was obtained by fraud.

According to Lenske, when he was apprised of the second fraud action filed by the Bode estate he reconveyed the Bode 120 acres back to defendant. He also demanded a reconveyance of the California Way property to plaintiff and offered to cancel the $30,000 note and release the mortgage on that property if defendant would reconvey. Defendant refused, and this suit was commenced.[2]

At the close of the trial, the circuit judge rendered an oral decision for the defendant in which he found that plaintiff had not sustained the burden of proof, that "fraud taints most of the dealings involved in this case * * *," and that Lenske was "in equity with unclean hands."

We agree with the findings of the trial court.

4. Plaintiff's suit is essentially one for rescission of the entire transaction, with an alternative prayer for a judgment on the $30,000 note in the event that it is not entitled to rescission. Plaintiff bases his claim for rescission on the fact that his title to the Lottie Bode property was impaired by the suit brought by the Bode estate in which it was alleged that the conveyance by Lottie Bode to defendant was obtained by fraud. There is no evidence in the record as to the result of the suit by the Bode estate. Lenske testified that the suit had been settled, but there is no testimony indicating that plaintiff's title to the property was impaired as a result of the suit. Accordingly, plaintiff has failed to prove its right to rescission of the agreement.

[2] Lenske testified that a suit to foreclose the mortgage on the California Way property had been filed in the state of Washington; however, the record does not show the results of that suit.

5-7. It is a familiar and well-established rule that a suitor in a court of equity is entitled to equitable relief only under the conditions which equity may impose. One of the conditions is that: "He who comes into equity must come with clean hands." *McKee v. Fields,* 187 Or 323, 326, 210 P2d 115 (1949). Equity will deny relief to those guilty of improper conduct no matter how improper the defendant's behavior may have been. 30 CJS 1010, 1011, Equity § 93 (1965). It is not necessary that the clean hands doctrine be pleaded as a defense, and the trial court or this court, hearing the case de novo, may invoke the doctrine on its own motion. *Merit v. Losey,* 194 Or 89, 103, 240 P2d 933 (1952).

8. We agree with the trial court's finding that fraud was practiced in many of the transactions involved in this case. We also take particular note of the following:

At the time of Lenske's negotiations with the trustee to purchase the Fernandez assets mentioned previously, Fernandez also had an interest in 140,000 acres of timberland in Canada. According to Fernandez, the property had been offered for sale by Time Realty, a Washington company, for three and one-half to four million dollars. Fernandez made an arrangement with Time Realty that if the latter would persuade the sellers to reduce the price to $1,750,000 Fernandez would increase the commission and pay Time Realty $550,000. The price was reduced to $1,750,000 and Fernandez signed an instrument showing his obligation to pay Time Realty $550,000 for handling the sale.

Lenske testified that the trustee in bankruptcy was suspicious of the validity of Fernandez's obligation to Time Realty. Lenske also testified that in his

opinion it was a "fake." In spite of this belief, Lenske prepared and filed a claim for $550,000 for Time Realty in the bankruptcy proceeding. The trustee required the Time Realty claim and others to be satisfied.

Fernandez testified that Lenske told him, after the Time Realty obligation for $550,000 had been filed in the bankruptcy, that if he, Fernandez, could get a release from Time Realty they could buy the assets "for very little or nothing." Fernandez also stated that he secured the release from Time Realty by executing a new agreement whereby he personally guaranteed the payment to Time Realty. Apparently Lenske received a credit of $70,000 for the release when he purchased the other assets.[9]

Lenske testified that after the separation of the McDonalds, the original incorporators of plaintiff corporation, he "decided to make use of the corporation for myself." He also testified unequivocally, on several occasions, that the corporation had never issued any stock. However, the reports submitted by plaintiff to the corporation department show the contrary. Several of the annual statements signed by Lenske as an officer in Merimac Co., Inc., stated that 100 shares of no par value stock had been issued. The record does not show the identity of the owners of this stock. On another occasion, Lenske attempted to offer minutes of a meeting of either shareholders or directors of plaintiff corporation when it was conceded that the meeting had not occurred.

After considering the entire record we agree

---

[9] Lenske also testified that he and five others were indicted for fraud and charged with conspiracy to obtain the allowance of a fraudulent mortgage as a valid claim against the bankruptcy estate, but that the indictment against him was dismissed.

with the trial court that plaintiff has not sustained the burden of proof and is not entitled to invoke the aid of a court of equity in this suit.

Affirmed.

HOLMAN, J., concurring in part; dissenting in part.

I agree with the majority opinion that plaintiff failed to prove that it was entitled to a rescission of the agreement with defendant. There was no proof that defendant's title to the 160 acres secured from Lottie Bode was ever impeached as the result of the suit brought against defendant by her estate. No disposition of that litigation was ever shown.

I disagree with that portion of the majority opinion which denied plaintiff's alternative prayer for judgment on its $30,000 note given by defendant as consideration for the transfer of the California Way property in Seattle. There is no evidence that plaintiff was guilty of any conduct toward defendant which would make it inequitable or improper to enforce the contract between them. The evidence upon which the majority depends, to sustain its finding that plaintiff did not come into court with clean hands, related not to the transactions between plaintiff and defendant but, rather, to plaintiff's transactions with the trustee in bankruptcy. I, therefore, find it unnecessary to judge that conduct.

As a result, I would give plaintiff a judgment for $30,000, as prayed for, on the note, and remand the case for the setting of attorney fees as they relate to the note.

O'CONNELL, C. J., and McALLISTER, J., join in this opinion.