PORTER v. LANDIS.

1. DEEDS—VARIANCE BY PAROL.

No parol proof may be admitted to give a deed a different effect than such as the words in it legitimately import, where such proof is presented by a party claiming under the deed.

2. SAME—PARTY CLAIMING UNDER A DEED MUST CONFIRM IT IN ITS ENTIRETY.

One who claims under a deed confirms all its provisions, and cannot establish his claim by adopting those provisions, only, which are in his favor, while he repudiates or contradicts others that are repugnant thereto.

3. SAME—ASSIGNS OF SURVIVOR OF GRANTEES DESCRIBED AS HUSBAND AND WIFE—QUIETING TITLE.

Assigns of surviving grantee, a man, were entitled to have title to land quieted in them as against claims of heirs of deceased woman, where conveyances to such man and woman described them as husband and wife and at time of such conveyance she was not yet divorced from her husband, as the heirs who claim under the deed must confirm the deed in all its parts and are not permitted to vary the terms of the deed under which they claim by parol evidence, notwithstanding the assigns may not be innocent purchasers for value.

Appeal from Oakland; Hartrick (George B.), J. Submitted October 4, 1950. (Docket No. 26, Calendar No. 44,862.) Decided December 5, 1950.

Bill by Henry J. Porter and others against Robert Landis, individually and as administrator of the estate of Bessie Porter, also known as Bessie Landis, deceased, and others to quiet title to real estate.

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 16 Am Jur, Deeds, § 445; 20 Am Jur, Evidence, §§ 1099, 1102.

Cross bill by defendants against plaintiffs for partition. Decree for plaintiffs. Defendants appeal. Affirmed.

*Harcourt S. Patterson,* for plaintiffs.

*Verne C. Hampton,* for defendants.

SHARPE, J.   Plaintiffs began the instant suit to quiet title and determine the nature and extent of the legal title and interest of the plaintiffs in lots 27, 28, 29, 30, 42, 43, 46, 47, 48 and 49 of Moon Valley Subdivision, township of Independence, Oakland county, Michigan.

Bessie Porter was the wife of Ed Landis. They were divorced August 31, 1942. Defendants, Robert Landis, Lillian Hodge and Mary Robtoy, are children of that marriage. It appears that in 1933 Bessie Landis left her husband and went to live with Ernest Porter and through the years became known as the wife of Ernest Porter. Prior to her divorce from Ed Landis, lots 46, 47, 48 and 49 were conveyed by warranty deed to "Ernest Porter and Bessie Porter, his wife." Lots 27, 28, 29 and 30 were conveyed to Ernest Porter May 2, 1944. Lots 42 and 43 were conveyed to "Ernest Porter and Bessie Porter, his wife," on June 16, 1943.

Bessie Porter died intestate January 29, 1944. On January 4, 1946, Ernest Porter executed a quitclaim deed of all the above lots to his brother Henry J. Porter and Bertha Porter, his wife, and deposited it with his attorney in escrow to be delivered upon his death. Ernest Porter died September 9, 1947, and the deed was then delivered to Henry J. Porter and wife and duly recorded, following which they went into possession of the property.

On August 9, 1948, Henry J. Porter, Bertha Porter and the administrator of the estate of Ernest Porter

filed a bill to quiet title to all of the lots alleging that for many years prior to the purchase of any of the property Ernest Porter and Bessie Porter entered into a common-law marriage and lived together and were known in the community as husband and wife; that they continued to live together as husband and wife until the death of Bessie; and that the records of the county clerk's office of Oakland county indicate that Bessie was divorced from one Ed Landis on August 31, 1942, therefore, a cloud was cast upon the title to lots, 46, 47, 48 and 49.

Defendants, children of Bessie Landis and the administrator of her estate, filed an answer denying any common-law marriage between Ernest Porter and Bessie Porter. They filed a cross bill in which they claimed an undivided half interest in all lots acquired by Ernest Porter and Bessie either by way of land contract or deed; and asked for partition of the property.

The trial court entered a decree quieting title to all the property described in the bill of complaint in Henry J. Porter and Bertha Porter, his wife. In an opinion the trial court said:

"A common-law relationship could not exist prior to her (Bessie's) divorce. Sufficient testimony was introduced to conclude that such a relationship was logically intended subsequent to the date of the decree.

"The factor of whether or not a common-law relationship existed is not determinative of the issues in this case. The deeds in question were taken by Ernest Porter and Bessie Landis, known as Bessie Landis Porter, as husband and wife.

"In view of the circumstances that Bessie Landis, known as Bessie Landis Porter, predeceased Ernest Porter we are restricted to a determination of the interest she acquired under the conveyance as the wife of Ernest Porter.

"Her heirs now claiming a half interest under these deeds are entitled to receive only what their mother would have received if she had been the wife of Ernest Porter."

Relying upon *Jacobs* v. *Miller,* 50 Mich 119, *Hawley* v. *Dibble,* 184 Mich 298, and other authorities, the court in a supplementary opinion held:

"The holding of the opinion heretofore rendered that one who claims under a deed, confirms all its provisions and cannot establish his claim by adopting those provisions only which are in his favor while he repudiates or contradicts the others that are repugnant, is controlling in this case."

Defendants appeal and claim that as heirs of Bessie Landis they are not estopped from offering testimony showing their mother was not the wife of Ernest Porter at the time Ernest Porter and Bessie Porter (Landis) acquired title to lots 46, 47, 48 and 49; and ask the court to remand the case for a determination of whether or not there was a common-law marriage between Ernest Porter and Bessie Landis as this question affects the title to lots 42 and 43 in which defendants claim an undivided one-half interest.

We are not in accord with defendants' claim that they could show by parol evidence that their mother was not the wife of Ernest Porter.

In *Jacobs* v. *Miller, supra,* an ejectment case, the land in question was conveyed by a guardian's deed, authorized by a decree in chancery, to "Leo E. Taufkirch and Margaret Taufkirch, his wife, their heirs and assigns." Subsequent to the death of Margaret, the surviving grantee conveyed the entire estate in fee simple to Margaret Miller. Defendants in ejectment held under that deed. The plaintiff was the transferee of the heirs at law of Margaret, who after having been divorced from their father

married Leo E. Taufkirch and had lived with him as his wife until her death. The heirs contended that in fact their mother's second marriage to Taufkirch was illegal for the reason that Taufkirch had a wife living in Canada at the time of his marriage to their mother; that, consequently, Margaret and Leo E. Taufkirch did not take title to the land by entireties, but as tenants in common. It was there held:

"It was error for the court to permit the plaintiff to contradict the prima facie legal operation of the chancery deed under which both parties claim and to change the estate from that which the terms unequivocally mark out to another wholly different and not within the meaning of the words of the instrument."

The court said:

"They (children of Margaret) voluntarily demand the judgment of the court to allow them to affirm and have the benefit of the chancery conveyance insofar as it undertakes to pass the whole property; and then to turn round and contradict it insofar as is purports to fix and manifest the nature and quality of the estate, and moreover, to permit them to reach this end by parol evidence showing that the relation between their mother and Taufkirch was a criminal relation. * * *

"By the principles of the common law the legal effect due to the plain words of a deed cannot be contradicted by parties or privies in any collateral matter by parol evidence. The terms must stand and receive their just legal significance. 2 Wharton, Evidence, §§ 1050, 1054, and cases; *Jackson* v. *Foster* 12 Johns (NY) 488; *Jackson* v. *Robert's Ex'rs,* 11 Wend (NY) 422. The name of the grantee is part of the deed (2 Rolle's Abr 43), and where a deed is made to several individuals without designating in what proportions they shall hold, they will take in equal proportions precisely as though it had been detailed at length in the deed (*Campau* v. *Campau,* 44 Mich 31;

*Treadwell* v. *Bulkley,* 4 Day [Conn] 395) and no pa-
rol proof can be admitted to give the deed a different
effect than such as the words in it legitimately im-
port. *Treadwell* v. *Bulkley, supra; Morse* v. *Shat-
tuck,* 4 NH 299; *Gully* v. *Grubbs,* 1 J.J. Marsh (Ky)
387, 388, 389, 390; 1 Cowen & Hill's notes 217, 1428
*et seq.,* 1442, 1444. The case before us is governed
by the same principle.    *    *    *

"Among the rules which have become axiomatic
is one that a party must be consistent and not con-
tradictory in the positions which he takes. In the
language of Lord Kenyon he must not 'blow hot and
cold' at the same time. And one of the most impor-
tant applications of the rule is where a party en-
deavors to establish a right or title in himself under
one provision or implication of a deed or other in-
strument by ignoring or contradicting another pro-
vision or implication which is destructive or fatally
repugnant. Now according to the reason of the rule,
which applies as well to deeds as to wills, a person
cannot claim under the instrument without confirm-
ing it. He must found his claim on the whole and
cannot adopt that feature or operation which makes
in his favor and at the same time repudiate or con-
tradict another feature or operation which is counter
or adverse to it.    *    *    *    The case of the plaintiff is
in direct contravention of this rule."

In *Hawley* v. *Dibble,* 184 Mich 298, plaintiff filed a
bill to quiet title, as was done in the case at bar.
The conveyance involved was to "William and Sarah
Fitzgibbons, husband and wife." William prede-
ceased Sarah J. Fitzgibbons. Sarah conveyed an
undivided one-half interest to one Gould and later
conveyed the remaining undivided half interest to
complainant. It appears that William was survived
by 3 children of a former marriage who claimed that
at the time their father was married to Sarah J. he
had not been divorced from his first wife and that
she was then living in the State of New York; and

that Sarah, not being the wife when the deeds were made, the parties thereto took as tenants in common and not by entirety and upon the death of their father his undivided half descended to them. The Court held the case was controlled by the principles stated in *Jacobs* v. *Miller, supra,* and said:

"Upon the issue as to whether an estate by the entirety or an estate in common was created by the conveyances, the complainant insists that an estate by the entirety was thereby created, but he argues, whether it was or not, it so purported to be upon its face, and that parol evidence was not admissible to contradict it by showing that Sarah J. was not, in fact, the wife of William at the time the deeds were made. He supports this contention by a citation of several cases, but the one particularly relied upon is *Jacobs* v. *Miller,* 50 Mich 119. We have examined this case with care, and are unable to distinguish it from the one under consideration. Upon the question as to whether parol proof was admissible to show that the parties were not in fact husband and wife, the court said in part: * * *   (quotation from *Jacobs* v. *Miller.*)

"The cases of *Dowling* v. *Salliotte,* 83 Mich 131, and *Auditor General* v. *Fisher,* 84 Mich 128, are cited in support of the proposition that oral evidence is admissible for the purpose of showing that the parties were, as a matter of fact, husband and wife, in order to show that the estate is one by the entirety. Those are cases in which the deeds were silent as to whether the parties were husband and wife. In such event the rule against contradicting the terms of a written instrument by parol evidence would not be infringed; whereas, if the deed stated the parties were husband and wife, and it would be shown by parol evidence that they were not, the rule would be violated.

"In the *Jacobs Case* another reason is given why defendants should not be permitted to contradict the

recited fact in the deed that the parties were husband and wife. It is that:

"'One who claims under a deed confirms all its provisions, and cannot establish his claim by adopting those provisions, only, which are in his favor, while he repudiates or contradicts others that are repugnant thereto.'

"In the instant case the defendants, who are trying to contradict the terms of the deed in this respect, are claiming an undivided half interest in the lots by force of the same deed. They do not accept the instrument as a whole. They accept what is favorable to them, and attempt to reject what is unfavorable. This is just what the *Jacobs Case* holds they ought not to be permitted to do."

Defendants in the case at bar contend that *Jacobs* v. *Miller, supra,* and *Hawley* v. *Dibble, supra,* applied the doctrine of estoppel, protecting innocent purchasers for value from the survivor; and that the case at bar can be distinguished from these cases in that Henry J. Porter and Bertha Porter are not innocent purchasers for value.

We are not in accord with this view of the decisions in those cases. In each case decision was based upon the well-established rule that "one who claims under a deed confirms all its provisions, and cannot establish his claim by adopting those provisions, only, which are in his favor, while he repudiates or contradicts others that are repugnant thereto."

See, also, *Young* v. *Young,* 200 Mich 236.

The decree of the trial court is affirmed, with costs to plaintiffs.

BOYLES, C. J., and REID, NORTH, DETHMERS, BUTZEL, CARR, and BUSHNELL, JJ., concurred.