Argued September 10, divorce affirmed, modified in
partition December 31, 1958, petition for rehearing denied
March 4, 1959

## BRANDT *v.* BRANDT

333 P. 2d 887

J. *Robert Patterson,* Portland, argued the cause and filed briefs for appellant.

*James O. Goodwin,* Oregon City, argued the cause for respondent and cross-appellant. With him on the brief was Glenn R. Jack, Oregon City.

Before PERRY, Chief Justice, and ROSSMAN, WARNER and MCALLISTER, Justices.

ROSSMAN, J.

This is a consolidated appeal taken by the defendant, Edward V. Brandt, from the final action which the circuit court took in the following three cases: (1) a suit for divorce and property distribution; (2) a suit between the same parties which sought partition of the real property which the couple accumulated in the period in which they assumed they were lawfully married; (3) a replevin action between the same parties concerning some personal property possessed by the defendant and acquired in the period of the putative marriage. In each case Ella Mae Brandt was the plaintiff and the aforementioned Edward V. Brandt was the defendant.

The plaintiff and the defendant underwent a marriage ceremony in 1935 in the State of Washington. The marriage was void because the plaintiff had a husband living at that time from whom she was not divorced.

The proceedings which have culminated in this appeal were started August 31, 1950, when the plaintiff filed, in Clackamas county, a suit for divorce asking for an award of specific property in Clackamas county in addition to other relief. In his answer, the defendant alleged that the plaintiff still had a husband living and this was, in turn, admitted by the reply. As a result, the court entered a decree February 19, 1951, which (1) granted an annulment to the defendant; (2)

gave the plaintiff all of the real and personal property located in Clackamas county, based upon a description contained in the complaint; and (3) awarded the defendant all of the rest of the property including real property situated in Multnomah county, Oregon, and Skamania county, Washington, together with some personal property.

Prior to rendering the decree which we just mentioned, the trial judge stated in an oral opinion that he felt that the plaintiff sincerely believed before she married the defendant that she had been divorced from her first husband, and that the parties had entered into the marriage in good faith. The trial judge also said that if the plaintiff had been entitled to a divorce he would have given her all of the property, but that he could not since the defendant was entitled to an annulment. He then declared that he would award the plaintiff "the Clackamas County property" and the personal property. His reference apparently was to the description of the Clackamas county property employed in the complaint which described it as "Home property near Clackamas in Clackamas County, Oregon, owned as tenants by the entirety, consisting of a house and outbuildings and an adjacent piece of property consisting of one house which is rented" followed by a reference to the Deed Book of Clackamas County. The decree rendered on February 19, 1951, however, did not refer to this property as the "home property," but merely repeated boundaries contained in the complaint. The description which was employed in that manner did not include what may be termed the "home property" but only four acres of pastureland adjacent to the tract on which the buildings were located.

According to affidavits filed later, it appeared that the description contained in the complaint and later

incorporated in the decree was taken from deeds which the plaintiff had found in her home and handed to her counsel. In truth, they were not the only deeds of the Clackamas property, but the plaintiff and her counsel assumed that they were and, therefore, since the plaintiff had little money, her attorney did not check the records to see if they included all of the home property. The plaintiff's attorney prepared the decree and submitted it to the defendant's attorney who approved it, whereupon it was signed by the judge. The inadequacy of the description was called to the attention of the plaintiff's attorney April 20, 1951, after the term of court had ended, by a letter from the defendant's attorney, stating that no appeal would be taken and that the defendant was willing to give the plaintiff possession of all of the property mentioned in the decree and all of the personal property located thereon. The letter pointed out that the property on which the houses were located was not mentioned specifically in the complaint or in the decree. It further stated that the attorney for the defendant believed that the property on which the houses were located was held by the parties as tenants in common. The letter was written just after the time for appeal had run.

As a result of this letter, the plaintiff filed a motion May 12, 1951, asking for an order entering a nunc pro tunc decree to correct the original decree. The motion was based on (1) affidavits which stated how the mistake occurred, and (2) the oral decision of the court to which we have referred. This motion was supplemented November 3, 1951, by one for leave to file an amended complaint and was accompanied with the proposed amended complaint. The only change which it was sought to make in the pleading was to incorporate in the complaint a complete description of the home

property in Clackamas county, including the land on which the buildings were located. The two motions were denied November 7, 1951, and the grounds for the denial were given in a memorandum opinion, dated November 2, 1951. The memorandum opinion, after describing the proceedings that had taken place in the case, pointed out that the term of court ended on April 2, 1951; it then went on to say:

"This Court is not unmindful that at the time the oral decision was rendered the Court was under the impression that the Court was awarding to the plaintiff the 'home property' near Clackamas in Clackamas County, Oregon, owned as tenants by the entirety and consisting of a house and outbuildings and an adjacent piece of property consisting of one house which is rented. It was the intention of the Court to award the plaintiff that property. The Court intended that the plaintiff should have the Clackamas 'home property' as a home for herself and the 10-year-old son whose custody was awarded the plaintiff. The Court was under exactly the same impression and understanding when the decree was signed. At no time was there any testimony regarding any other property in Clackamas County or any intimation given the Court that the parties owned any other property in Clackamas County.

"The Court also remembers that counsel for both parties were in chambers when a discussion was held relative to the possibility of making a property settlement between the parties, and in that discussion the value of the Clackamas County property was discussed along with the value of all of the other properties of the parties, and the Court was under the impression at that time that the only property situated in Clackamas County was the 'home property' as mentioned in the Complaint."

Although this was a recognition that the decree was not as the court had intended, the judge felt that since

the term had ended he did not have power to correct the decree.

Following the denial of her motions to amend the decree, the plaintiff, on November 21, 1951, filed a petition in coram nobis, asking that the case be opened and the erroneous description changed. This was met by an answer of the defendant. January 11, 1952, the court issued a memorandum opinion in which it held that the petition for coram nobis could not be granted. It declared, however, that the court was in error when it denied the motion to amend the original complaint. In the course of this opinion, the court, speaking of the original decision, stated:

"By this decision the Court meant just what it said and that the plaintiff was to have all of the Clackamas County property owned by the plaintiff and defendant as tenants by the entirety. The Court, by its decision, awarded to the plaintiff the 'Home property near Clackamas in Clackamas County, Oregon, owned as tenants by the entirety, consisting of a house and outbuildings and an adjacent piece of property consisting of one house which is rented,' as well as the vacant, unimproved lots or parcels of property that adjoined the 'home property.'

"All the testimony at the trial relating to the property or the value of the property was regarding the 'home property' and not the unimproved parcels of property owned by the parties which adjoined the 'home property.'

"The Court did intend to and did award to the plaintiff all the property that the plaintiff and defendant owned near Clackamas in Clackamas County, Oregon, so that she could have a home for herself and the child and a home that they could live in and would produce for the plaintiff some income and give her some security.

"In the opinion of the Court both the plaintiff

and the defendant, as well as their respective attorneys, understood that was just what the Court intended to do, and at no time did the Court have any intention of ever depriving the plaintiff of the 'home property near Clackamas in Clackamas County, Oregon, owned as tenants by the entirety, consisting of a house and outbuildings and an adjacent piece of property consisting of one house which is rented,' which even the defendant testifies was worth from twenty to twenty-five thousand dollars, and award to the plaintiff unimproved property worth only about one-twentieth of the property that the Court intended the plaintiff should be awarded.

"The houses, buildings and other improvements on the 'home property' of the parties are all located on portions of land which, due to an error and mutual mistake, however, were not actually described or referred to in the judgment and decree entered in this cause on February 19, 1951."

The memorandum opinion then stated that the court had the inherent power to correct the decree to conform it to the actual decision that was announced, commenting that "to fail to do otherwise would be a travesty upon justice." The opinion declared that the correction of the mistake could be made after the term under the rule announced in *Silliman v. Silliman*, 66 Or 402, 133 P 769. Then, upon its own motion, the court entered a nunc pro tunc decree to the effect that the plaintiff should be awarded all of the property in Clackamas county owned by the parties as tenants by the entireties. An order to this effect was made on February 7, 1952, and the amended decree was entered February 8, 1952. The decree differed from the original decree only to the extent that it corrected the description of the property which the court had intended should be awarded to the plaintiff.

February 13, 1952, the defendant moved that the

provisions of the amended decree nunc pro tunc awarding a property interest to the plaintiff be stricken, relying on the then recent cases of *Gibson v. Gibson,* 193 Or 139, 237 P2d 498, and *Polanski v. Polanski,* 193 Or 429, 238 P2d 739. The Gibson case held that the circuit court, when sitting as a divorce court, is one of limited jurisdiction and has no power to award alimony to the guilty party despite the fact that the parties had so agreed. It cited *Garner v. Garner,* 182 Or 549, 189 P2d 397, which had ruled similarly where no agreement was involved. *Polanski v. Polanski,* supra, approved a conditional decree which awarded property to the successful party as his own on condition that he deed other joint property to the party at fault, the decision ruling that such a decree was proper even if the court did not have the authority to make a direct division and award of the property which was jointly held. February 21, 1952, the court struck the entire amended decree nunc pro tunc and stated that it would enter a second amended decree nunc pro tunc. Later in that day such a decree was entered, expressly nunc pro tunc for February 19, 1951, making a conditional type of decree as approved by this court in the Polanski case. By its terms, the defendant was granted the same property that he had been awarded by the earlier decrees, but on condition that he would deliver to the plaintiff deeds to the Clackamas county real property and bills of sale to the personal property located in that county; otherwise, the property award to the defendant to be of no effect. No appeal was taken from that decree, nor was the amended decree nunc pro tunc challenged by appeal, since it had been stricken at the same time that the second amended decree nunc pro tunc was entered. Following the entry of the second amended decree nunc pro tunc this case lay dormant until a motion was made

in 1955, the denial of which is the basis for the present appeal.

The defendant made no attempt to comply with the second amended decree nunc pro tunc, which seemed to leave the parties where they were at the start of the suit as far as their property rights were concerned; except, of course, they could not hold the property as tenants by the entireties. In the sense that the marriage was void, they had never held the property as tenants by the entireties since they had never been legally married. Prior to the entry of the amended decree nunc pro tunc, and apparently in reliance on the original decree, the defendant conveyed the property in the State of Washington to others.

In his amended answer and cross-complaint of November 15, 1950, the defendant alleged that he

"believed and relied upon the fact that the plaintiff and he had entered into a valid marriage and that she was his valid wife and did purchase numerous parcels of real property described in Paragraph IV of plaintiff's complaint and did consent to having the plaintiff's name placed upon the deeds to each of the said parcels of real property with the intent to create a tenancy by the entirety, and that the said real property was purchased with money wholly belonging to this defendant, and no part of the purchase price was paid by the plaintiff for any interest therein, and that the plaintiff has no interest in the said real property."

The prayer asked that the defendant be declared to be the sole and absolute owner of all of the real property described in the complaint. In essence, this was a prayer for reformation of the deeds to the parties as tenants by the entireties, and the court seemingly had the power to make such an award to the defendant. In

fact, the court did award the property in Washington and Multnomah county to the defendant, but apparently not on the basis of reformation for mistake, but as part of a division of the property since, if reformation had been the basis for the award, it would have followed logically that all of the real property would have been given to the defendant.

Since the date of the original decree, the defendant has kept in his possession and control all of the real and personal property owned by the parties, with the exception of the personal effects of the plaintiff and the sum of $3,018.50; the latter was the proceeds from a sale of cattle which were on the Clackamas county property at the time of the suit. The money from that sale was paid into court January 29, 1952, and was then paid to the plaintiff without the consent of the defendant or his attorney. The time when this money was paid does not appear in the record, but was probably after the entry of the amended decree nunc pro tunc. Aside from the offer to give the plaintiff possession of the pastureland as expressed in the letter from the defendant's attorney of April 20, 1951, there has been no attempt by the defendant to comply with the terms of any of the decrees entered in the annulment proceedings.

In order to enforce the rights which she felt she had in the property by virtue of the decrees rendered in the annulment suit, the plaintiff started the other two actions which are the further basis of this appeal. On January 23, 1953, she filed two complaints in the Circuit Court for Clackamas County, one in replevin for recovery of the personal property located in Clackamas county or the value thereof, which was alleged to be $10,518.50, and included the $3,018.50 already received from the sale of the cattle, and one

for partition by sale of the real properties located in Clackamas and Multnomah counties. August 7, 1953, an amended answer and cross-complaint was filed in the partition suit; it alleged that the original decree of the trial court was still in effect which awarded the defendant title to the Multnomah county real property, and that no appeal had been taken from that decree. The cross-complaint averred that (1) the defendant had purchased the properties in the two counties out of his personal funds and that it was "through a misunderstanding and mistake, either mutual or through the fraud of this Plaintiff, that the said deed was so made to read"; (2) by reason thereof "an unfair advantage was taken of this Defendant and that had he known the facts as they actually were he would not have had this Plaintiff's name mentioned in the deeds, nor would he have had her included as a Grantee." The prayer asked the court to reform the deeds so as to show the defendant as sole grantee. August 10, 1953, the plaintiff filed a motion asking that the entire answer of August 7, 1953, be stricken, or, in the alternative, that the cross-complaint be struck on the ground that the matter set forth in it had already been adjudicated.

August 12, 1953, both cases were tried together. Counsel stipulated that the defendant had all of the personal property except the $3,018.50, representing the cattle; that the property mentioned in the complaint in the partition suit was correctly described therein; that both the real and personal property in question had been accumulated and purchased during the time the parties were living together as husband and wife, and that it was paid for out of funds of the defendant during a time when the "plaintiff engaged in no remunerative employment * * * but * * * did work in-

dustriously on the property, caring for the property and chickens and stock and miscellaneous jobs"; and that the court could appoint a referee in case it decided that partition was a proper remedy in the partition suit.

On October 16, 1953, the court issued a memorandum opinion which, pertaining to the replevin action, stated that the court felt that the plaintiff was entitled to the personal property described in it or the value thereof. As to the partition suit, it stated that (1) the counterclaim should be stricken; (2) the real property was owned by the parties separately by virtue of the decree of February 19, 1951; and (3) the only effect of the two amended decrees nunc pro tunc was to correct the legal description of the property in Clackamas county to conform to the intended judgment of the court. However, certain clarifications of the record in both cases were suggested.

Nothing more was done in any of the cases until March 23, 1955, when there was a further hearing upon the terms to be incorporated in the judgment suggested by the memorandum opinion. The defendant argued that the decrees rendered by the court in the annulment suit were ineffective, since the court had no power to award any property to the party at fault, and that therefore a judgment in the two proceedings (replevin and partition) could not be based on those decrees. The plaintiff pointed out that the second amended decree nunc pro tunc was not subject to that criticism and was still in effect and, therefore, the request for partition was proper since the parties now held as tenants in common. Plaintiff also suggested that the court could partition the properties, or, if found of equal value, could give the property in Clackamas county to the plaintiff and give the property in Mult-

nomah county to the defendant. The defendant agreed that the court had some jurisdiction as far as partition was concerned. At that juncture the plaintiff was granted permission to file an amended complaint in which she would seek declaratory relief in the alternative to partition.

March 24, 1955, the court issued an order which struck the cross-complaint of the defendant as requested by plaintiff's motion of August 10, 1953.

March 31, 1955, the plaintiff filed amended complaints in each of the two proceedings. The gist of the amendments was to seek declaratory relief in the alternative to that previously sought.

April 14, 1955, the defendant moved to strike the portions of the second amended decree nunc pro tunc which had been entered in the annulment suit. Specifically, he moved to strike the entire second amended decree nunc pro tunc on the ground that it was improperly entered. He claimed that it changed the effect of the original decree concerning the property interests of the parties after the term of court had expired. He moved to strike the portions of the original decree which awarded the plaintiff any property interest on the ground that the court had no power to award anything to a party at fault. The motion was denied June 16, 1955, and that denial is the basis of the appeal in the annulment suit.

April 14, 1955, the same day that the motion just mentioned was presented, the defendant filed amended answers in the replevin and partition suits. The answer in the replevin action denied the allegations of the complaint and averred that the defendant purchased the personal property in question, had delivered to the plaintiff her effects, and that the court in the annul-

ment suit was without jurisdiction to award any property to the plaintiff. The answer in the partition suit was similar, except that, in addition, it alleged that the defendant would not have had the deed run to both parties had he known the true facts and that he was therefore entitled to have the deeds reformed to show him as the owner of the real property.

May 17, 1955, the court entered findings of fact and conclusions of law in the replevin suit which stated that the effect of the decree and amended decrees in the annulment suit was to embody the oral decision of the trial judge, and that therefore the plaintiff was entitled to restitution of the personal property. Accordingly, on June 9, 1955, a judgment was entered awarding the property to the plaintiff by ordering restitution. This judgment was the basis of the appeal in the replevin action.

June 9, 1955, a declaratory decree was entered in the partition suit. After finding (1) some basic facts as to the prior ownership of the property, and (2) the properties in Clackamas and Multnomah counties were approximately equal, it concluded that the lands could not be divided in kind without loss to the parties and that, therefore, partition was an improper remedy for the plaintiff. After taking note of facts in the annulment suit and finding that prior to the decrees in that suit the plaintiff owned a survivorship interest in all of the properties which was equal to an undivided half interest therein, the court declared that the effect of the decree and amendments in the annulment suit was to award the Clackamas county property to the plaintiff and the Multnomah county property to the defendant, and it was so ordered. The defendant filed an appeal from this decree which is the basis of the appeal in the partition suit. The plaintiff filed a cross-appeal

objecting to the denial of her prayer for partition of the property.

The defendant admits in his brief that the court had jurisdiction to consider the plaintiff's prayer for partition of the properties in Multnomah and Clackamas counties, but urges that more evidence should be taken to determine the share to which she is entitled and that a determination should be made as to the good faith of the plaintiff. This is hard to reconcile with his position in the appeal from the denial of the motion to strike in the divorce-annulment suit, since if he was correct in that claim, the result would be a decree which awarded him the Multnomah county real property as sole owner, as there has been no challenge to the power of the court to award an interest to the defendant. It is consistent with his position in the replevin suit, since he takes the view that there, because he paid all of the purchase money, he was always the complete owner of the personal property. At the same time, it is hard to see how he can complain about the entry of the second amended decree nunc pro tunc, even though it had the effect of nullifying the award to him made by the earlier decrees, since in his motion to strike portions of the first amended decree nunc pro tunc he cited the case of *Polanski v. Polanski* in which this court had approved the type of decree finally entered in this case. When the circuit court entered the decree authorized by the Polanski decision, the defendant made no attempt to appeal, apparently being content to let the decree take effect, knowing that it wiped out any award he had been given by the earlier decrees. *Bogh v. Bogh,* 185 Or 93, 202 P2d 503, holds that a court has no power, after the term, to change a decree by importing into it something that was not in the mind of the judge at the time of the entry of an original decree. How-

ever, while the second amended decree nunc pro tunc does, as we have seen, void the earlier award to the defendant, it was an attempt by the trial judge to effect the result he announced at the close of the annulment suit in accordance with holdings of this court which had been decided between the time of the entry of the original decree and the first amended decree nunc pro tunc. While the Bogh case rules that an order incorporating additional relief is void, it also holds that such an order is final and appealable. Since (1) the parties were before the court in an effort originally to correct a decree which did not reflect the intended judgment of the trial court, a procedure expressly approved by the Bogh case, (2) the final amendment did no more than try to effect the intended judgment in a manner consistent with the holdings of this court, and (3) the defendant failed to take an appeal from that amendment, we do not believe that the second amended decree nunc pro tunc is void in the sense that it may be attacked collaterally or by a motion to strike long after the time for appeal has passed. Rather, if it is defective in the sense that the court had no power to change the rights of the parties, it is in the nature of judicial error and, not having been appealed from, it must stand. Since it effectively replaced the original decree in the record, we feel there is no need to consider the question of whether the original decree should be stricken from the record. The denial of the motion to strike the decrees in the annulment suit is affirmed.

■ Having decided that the only presently effective decree in the annulment suit is the second amended decree nunc pro tunc, we turn to a consideration of its effects on the replevin and partition suits. Its principal effect was to leave the parties where the court found them, since the defendant has not attempted to

comply with the decree's provisions and, therefore, it makes no disposition whatever of the property held by the parties. A further effect is to foreclose the relitigation in these suits of any questions which were or might have been litigated in that suit. *Associated Oil Co. v. Edgerton,* 158 Or 607, 77 P2d 416. Our duty, then, is to determine what property rights, if any, the plaintiff has in the property held by the defendant. By virtue of the effective decree in the annulment suit, we are precluded from any consideration of what that court could have done or could do now under our amended statute: Oregon Laws 1953, ch 635 (ORS 107.100(4)).

The basic problem of the rights of a de facto spouse in the property of the other has been before the courts in a myriad of cases, and has been the subject of extensive annotations, as well as numerous treatises. However, in view of the various combinations of fact situations and the wide diversity of legislation in the field of domestic relations, cases from other jurisdictions are often of little help other than, perhaps, to point out trends. See Evans, "Property Interests Arising From Quasi-Marital Relations," 9 Corn LQ 246 (1924). For a collection of cases on the general problem of what relief may be given to a putative spouse, see 31 ALR2d 1255, "Rights and remedies in respect of property accumulated by man and woman living together in illicit relations or under void marriage," and 11 ALR 1394, "Division of property upon annulment of marriage."

██ For the most part, the cases concern the power of a court to divide the property and create property interests where none clearly exist. This is usually done in the annulment proceeding on theories of partnership, general equity powers, the "putative wife" doc-

trine of the civil law (the latter being in vogue particularly in Texas, Louisiana and California, where a good-faith putative wife is given many of the property rights of a legally married spouse) or on theories of quasi-contract for services rendered. See 17 Georgetown L Jr 60; 7 Okla L Rev 221, which points out some defects in the Oklahoma theory of partnership, and Evans, supra. For additional notes discussing cases in the area of general division of property, see 10 Ark L Rev 188; 28 N Dak L Rev 322; 2 Cath UL Rev 113; 23 Miss L Jr 147; 1 Mercer L Rev 310; 1 Loyola L Rev 54; 76 U of Penn L Rev 439; and 5 Minn L Rev 149. For particular comments on the theory of a quasi-contractual right of compensation for services, see 17 Georgetown L Rev 60, 66; 33 Minn L Rev 321; and *Sanguinetti v. Sanguinetti,* 9 Cal 2d 95, 69 P2d 845, 111 ALR 342. The latter theory is not available to the plaintiff in this case, since it was not presented by the pleadings, and if it were now suggested, recovery would be barred by the statute of limitations, since the plaintiff has not rendered any services to the defendant since 1950. Under the rule announced in *Garner v. Garner,* 182 Or 549, 189 P2d 397, and *Gibson v. Gibson,* 193 Or 139, 237 P2d 498, the court had no power to make any division of property which awarded anything to the plaintiff, and, therefore, any division of the property effected in either the replevin or the partition suit must be based on some evidence of title in the parties.

▬ We shall first consider the status of title to the personal property. While the trial court in the annulment suit originally intended to award the personal property to the plaintiff, the final decree did not do so, and this decision was not challenged by the plaintiff by appeal. Therefore, any claim of title by the plaintiff

cannot be based on the original decree which is, as we have seen, of no effect. Therefore, the trial court erred in concluding that the plaintiff had title by virtue of the annulment suit, and any title supporting her replevin suit must be found elsewhere. In this connection the plaintiff contends that the defendant has taken advantage of the original decree by conveying the Washington property and by asserting a claim to the property given to him by that decree and, therefore, waived any challenge to that decree. While it is true that a party cannot accept a part of the benefits of a decree and challenge the remainder, (*Carpenter v. Carpenter,* 153 Or 584, 56 P2d 305, 57 P2d 1098, 58 P2d 507) the decree in question was superseded with the acquiescence of the plaintiff and she is not in a position to argue that the original decree is of any force and effect, regardless of any question of the power of the trial court to render such an award to the party at fault. This latter point is mentioned since, as part of her argument, the plaintiff has contended that a divorce court may now, by virtue of a statutory amendment enacted after the annulment suit, render such a decree and, therefore, any defect in the award of the original decree is corrected.

The plaintiff has suggested that the trial court should have declared that the personal property was jointly owned by the parties. No authority is given for that contention, though reference is made to the argument in the cross-appeal in the partition suit where a joint ownership argument is made concerning the real property. As will be seen, that argument rests on substantially different grounds. The only basis on which the court could make such a declaration, aside from actual title, is that it has some power to make a division of the property, but the replevin suit is a

law action and even if some such power should exist in an equity proceeding, it does not exist here.

The only evidence presented on the question of title, aside from the ineffective annulment decrees, was a stipulation that the funds of the defendant paid for the property. There is no evidence that he intended to make a gift of it to the plaintiff or to give her any interest in it. In fact, there is no evidence in the record of any specific title to the personal property and, since it is primarily household and farm property, it seems doubtful that any bills of sale and the like could now be produced, twenty-three years or so after the property was acquired. In this state of the record, it seems advisable to remand this case to the circuit court for the sole purpose of taking any other evidence of title which the parties can produce, aside from the admitted fact that the defendant paid for all of it with his funds. In addition to the fact that the source of funds is evidence of title, the defendant has mentioned that the case of *Wagner v. Wagner*, 206 Or 340, 293 P2d 224, established as the law of Oregon the presumption that personal property held jointly by spouses, such as household property, is the property of the husband. That presumption arises from the early common-law doctrine that all of a wife's personal property belonged to her husband after their marriage. *DuPont v. DuPont*, 33 Del Ch 571, 98 A2d 493. Since the very foundation of this presumption is not present in this case, the parties never having been married, it has no weight here, and the parties will be left to actual proof of title. If the plaintiff cannot produce any evidence to show title in herself, the defendant is entitled to retain the personal property. This means that the plaintiff must return the proceeds she has received from the sale of the cattle, if she can show no

title. The judgment in the replevin suit is therefore reversed and the case is remanded.

■ In the partition suit, the plaintiff alleged that she and the defendant were owners as tenants in common of the property in Multnomah and Clackamas counties. The defendant has argued that the court had no power to award the plaintiff any interest in the property, and in this we agree. However, this does not settle the question, since even the defendant admits that the court had the power to partition the property on the basis of actual ownership. In Oregon, as in most jurisdictions, a conveyance made jointly to parties who are not married, but think that they are, creates a tenancy in common. *Merit v. Losey,* 194 Or 89, 240 P2d 933; *Hughes v. Kay,* 194 Or 519, 242 P2d 788; *West v. Knowles,* 50 Wash2d 311, 311 P2d 689. In some states the issue has been whether an attempted estate by the entireties becomes a tenancy in common or a joint tenancy, but that question is not presented in this case. See *Twigger v. Twigger,* 110 Or 520, 223 P 934.

■ The defendant has stated that the deed should be reformed to show his name as the only grantee. Granting that some basis might be found for reformation of the deed such as mutual mistake (*Hutson v. Hutson,* 168 Md 182, 177 A 177 (see 14 ALR2d 918 for other possible grounds)), we think that the defendant is foreclosed from such relief for several reasons. First, as noted previously, the pleadings in the annulment suit essentially asked for reformation of the deed and, since the court had the power to make such a change (it would have been an award to the party not at fault) but did not, the issue must have been decided adversely to the defendant. Since he did not appeal any of the decrees on that ground, the matter is res judicata and he cannot raise it again at this late date. Secondly,

even if it had not been decided, the same basis for relief was presented in the partition suit by way of a counter claim, and the latter was stricken by the court on the ground that it had already been litigated. That order is not assigned as error. The averment still appears in the amended answer in the partition suit, but the defendant prayed only for a dismissal and not for affirmative action by the court.

We have, then, to determine the effect of a conveyance made to two parties, who in good faith believed that they were married, which will not be set aside for mistake or similar reason and where the funds for the purchase of the property came from only one of them, though during the period when the funds were being accumulated the de facto wife performed the usual duties which a lawful marriage would have imposed upon her. As we have seen, the estate by which they hold jointly is a tenancy in common, but the question still remains as to the proper share of each.

Help with this problem will be derived from Oregon cases which determined the effect of divorce upon a tenancy by the entireties. In *Hayes v. Horton,* 46 Or 597, 81 P 386, there was a dispute over the amounts each spouse had contributed to the property, but the court said that the question was immaterial since any argument that the wife held her share in trust for the husband was met by the presumption that the share was intended as a gift. In *Schafer v. Schafer,* 122 Or 620, 260 P 206, the majority opinion (at p 626) stated that

" * * * the unity of the estate by the entirety is made up of equals as the foundation thereof, and as the husband and wife, as regards the property, stood upon an equality before the rendition of the divorce by operation of the law after the

divorce they become tenants in common of the property."

And the minority, which disagreed with the majority on another point, stated:

" * * * we believe that the decree is correct in that it declares the plaintiff to be the owner of one half thereof. The fact that defendant furnished the purchase price, taking the title in the name of himself and wife, does not destroy plaintiff's interest therein because of the divorce proceedings. * * * The evidence does not show that plaintiff acquired that title by any unfair means. It was a voluntary gift to her from defendant. Conceding that plaintiff earned no part thereof by her services as wife of the defendant, her title to that property is as secure and valid as though she had paid a valuable consideration therefor * * * ."

In the case of *Wilhelm v. Wilhelm,* 126 Or 388, 270 P 516, the court awarded each an undivided one half, regardless of who paid.

■ Turning to the cases where the parties were not married, in *Merit v. Losey,* supra, the plaintiff brought a declaratory judgment action to have his rights determined under a contract to purchase real property. He alleged that he had supplied all of the funds so far used to make payments on the contract. At the trial it appeared that the parties had lived together as husband and wife though they had never undergone a marriage ceremony. The funds used to make payments prior to their separation came from joint funds to which both had contributed their wages, though it appeared that the plaintiff had contributed more than his putative wife. After the separation, the plaintiff had made all payments from his own funds. The purchase contract named both parties as vendees, stating that they were man and wife. The court concluded that they held the equitable title as tenants in common

and, since they had a joint and several obligation to pay the purchase price, the plaintiff was entitled to reimbursements for half of the payments he made after the separation. However, the court refused to make any accounting for the money paid prior to the separation, but gave each a half interest though, as noted, the pretended husband had contributed more. While this refusal to go further may have been based on the fact that they were in pari delicto, since the property was a house in which they carried on their illicit relations, the court considered their interests equal, regardless of which one furnished the funds. In *Hughes v. Kay,* supra, the parties held two parcels of land as husband and wife, though they had never been married. Nothing appeared as to the source of funds except the de facto husband's allegation that he supplied the funds. At the time they decided to separate, they agreed that the plaintiff should convey to the defendant his half interest in one tract and the defendant should deed to the plaintiff her half interest in the other tract. The defendant complied with the agreement, but the plaintiff refused. After concluding that they held as tenants in common, the court ordered the plaintiff to perform his part of the agreement. While the decision did no more than enforce a division which the parties had agreed upon, the court treated their interests in each parcel as equal despite the plaintiff's alleged furnishing of the consideration. Since both of these cases are distinguishable on their facts, in particular that the parties apparently knew that they were not married, they are not controlling. However, they indicate that the source of funds is not conclusive in determining the respective interests of such unmarried grantees and that the court has considered an equal division proper in at least those cases.

*Lawrence v. Heavner*, 232 NC 557, 61 SE2d 697, is very much in point. There, the plaintiff sued for recovery of half of the rents from property which the parties had conveyed to them as tenants by the entireties. Prior to the suit, the defendant had had their marriage annuled because the plaintiff had a husband living. The jury found that the plaintiff had not contributed anything to the purchase price of the property, but the court said that, nothing more appearing, they held the property as tenants in common and that their interests were equal, and that the only thing which could defeat the claim of the plaintiff would be correction of the deed under the power of equity to reform a deed for mutual mistake, or for mistake on one side and fraud on the other. As we have seen, in the present case the defendant has had the issue of reformation decided adversely to him—we think properly—and such a defense is not available to him.

In *Bell v. Little*, 204 App Div 235, 197 NYS 674, affirmed without opinion 237 NY 519, 143 NE 726, the supposed wife claimed an interest in land which had been deeded to her and her supposed husband as tenants by the entirety, though, in fact, a prior divorce of hers was invalid and therefore the parties were not married. The court stated that the effect of the conveyance was to make the parties tenants in common, and:

> "* * * Presumptively, their interests in common were equal. *Jackson v. Moore*, 94 App Div 504, 87 NY Supp 1101. This presumption is not rebutted by the fact that no part of the consideration was paid by the plaintiff, for the inclusion of her name in the conveyance as one of the grantees establishes conclusively that she acquired some interest in the premises."

That the land was not purchased by the parties but deeded to them by the supposed husband's parents does not seem to change the effect of the presumption.

 As we have noted with respect to the personal property, the presumption that the husband is the owner of the personal property does not apply, since the basis for it (the husband's marital rights at early common law) does not exist in this case. The same is not true, however, of the presumption expressed in the Hayes case, supra, since that presumption of gift must be based primarily on the affection in which a married couple hold each other, and we see no difference in that affection when the parties, in good faith, believe that they are married. The gist of the presumption is their probable intention at the time of the conveyance, and to say that some unknown impediment to a valid marriage negates such an intent at some later date is, to us, unacceptable. As stated in the Schafer case, the very foundation of an estate by the entirety, which the parties in this case tried to create, is equality. We find nothing in this case to refute this equality and, accordingly, the plaintiff is entitled to partition to secure to her the half interest which she claims.

It follows that the trial court was in error in awarding the Clackamas county property to the plaintiff on the ground that her title was established by the annulment decrees. It was also in error, however, in denying her partition. The trial court found that the two properties involved are of approximately equal value, and that they could not be divided in kind without great loss to the parties. These findings are not challenged, the defendant arguing only that a further determination should be made of the interest of the plaintiff. As we have decided, she is entitled to a half share and, therefore, that question is no longer in issue. On the

basis of these findings, the decree should be modified so as to deny the prayer of the plaintiff for a declaratory judgment, allow her prayer for partition and award her the Clackamas county property in lieu of partition by sale.

The result of all the foregoing is summarized as follows: The divorce-annulment suit is affirmed; the judgment in the replevin action is reversed and the cause is remanded; the decree in the partition suit is modified in the manner above stated.