Argued June 11, affirmed July 15, 1959

EMMONS, Administrator et al *v.* SANDERS et al

342 P. 2d 125

*Charles D. Burt,* Salem, argued the cause for appellants. On the brief was Charles W. Creighton, Jr., Salem.

*Sam Kyle,* Albany, argued the cause for respondents. On the brief were Willis, Kyle & Emmons, Albany.

Before McALLISTER, Chief Justice, and ROSSMAN, O'CONNELL and CRAWFORD, Justices.

O'CONNELL, J.

In this suit the plaintiffs claim the title to two parcels of land which had been conveyed to the defendant, Rosemary Sanders, and Fred Sanders now deceased. The deed to one of the parcels named as grantees "Fred G. Sanders and Rosemary Sanders, his wife," and the deed to the other parcel ran to "Fred G. Sanders and Rosemary Sanders, husband and wife." Prior to the execution of one of the above described deeds and after the execution of the other the grantees had entered into a marriage ceremony in Oregon. The grantees were first cousins. ORS 106.020 declares that marriages between first cousins are void.

The defendants contend that the effect of the conveyances was to create a tenancy by the entirety in each instance and that upon the death of Fred G. Sanders the defendant Rosemary Sanders became the sole owner of the two parcels and that the court erred in admitting into evidence the marriage certificate of Fred and Rosemary, dated April 18, 1946; in admit-

ting evidence that Fred and Rosemary were first cousins; and in holding the marriage void. The plaintiffs contend that since the grantees were not husband and wife the conveyances could not have the effect of creating a tenancy by the entirety but would create only a tenancy in common and that an undivided one-half interest in the two parcels passed by descent to Fidelia upon the death of her father, Fred G. Sanders.

In support of their position the defendants rely upon *Twigger v. Twigger,* 110 Or 520, 223 P 934 (1924). In that case a conveyance was made by a deed naming as grantees "F. C. Twigger and Martha Twigger, husband and wife." F. C. Twigger had married Martha less than six months after he had obtained a decree of divorce from his first wife. After the death of F. C. Twigger his son claimed an undivided one-half interest in the property conveyed on the ground that his father and Martha having entered into the marriage ceremony before the expiration of six months after the divorce decree the marriage was void under the law then in effect, and since the grantees were not husband and wife they did not take as tenants by the entirety but only as tenants in common. The court rejected the son's claim resting the case on two alternative grounds; first, that a curative statute had validated the marriage thus making the grantees husband and wife at the time of the conveyance, and secondly, that the recital in the deed that the grantees were husband and wife was binding upon the son as successor in interest to his father.

In the case at bar the defendants contend that this second ground for the decision in *Twigger v. Twigger,* supra, is controlling and that Rosemary Sanders is entitled to the entire estate as the surviving grantee of an estate by the entirety. It is necessary, there-

fore, to examine the rationale of *Twigger v. Twigger,* supra, and to determine whether it should be applied in the present case. In holding that the recital was conclusive upon F. C. Twigger's son, the court relied upon what is now ORS 41.350 which reads in part as follows:

"The following presumptions, and no others, are conclusive:

\* \* \* \* \*

"(3) The truth of the facts recited from the recital in a written instrument, between the parties thereto, their representatives or successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration."

The statute does not expressly place any limitations upon the conclusive effect of a recital except the designation of the class of persons with respect to whom it operates. However, the court in the Twigger case relies upon cases from other jurisdictions where it has been held that recitals in deeds are binding upon the parties and their successors in interest on the theory of estoppel, from which it may be inferred that the court regarded the statute as an expression of this common law principle.

There is real likelihood that the statute was drafted with this principle in mind. As we have recently observed, our statutes on evidence strongly reflect the influence of Greenleaf on Evidence. See *Cook v. Michael,* 214 Or 513, 330 P2d 1026.

There is a reasonable basis for assuming that ORS 41.350 also reflects this influence. In its discussion of conclusive presumptions 1 Greenleaf on Evidence (Redfield Ed) p 27 states:

"*Estoppels* may be ranked in this class of pre-

sumptions." Relating the idea more specifically to recitals it is said at page 28:

> "If it be a recital of facts in a deed, there is implied a solemn engagement, that the facts are so, as they are recited. * * *

> "In regard to *recitals in deeds,* the general rule is, that all parties to a deed are bound by the recitals therein, which operates as an estoppel, working on the interest in the land, if it be a deed of conveyance and binding both parties and privies; privies in blood, privies in estate, and privies in law. Between such parties and privies, the deed or other matter recited needs not at any time be otherwise proved, the recital of it in the subsequent deed being conclusive. It is not offered as secondary, but as primary evidence, which cannot be averred against, and which forms a muniment of title. Thus, the recital of a lease, in a deed of release, is conclusive evidence of the existence of the lease against the parties, and all others claiming under them in privity of estate."

The footnotes supporting the foregoing statement indicate that Greenleaf relied principally upon the law as stated by Justice Story in *Carver v. Jackson,* 4 Peters (29 US) 1 (1830) which carefully examines the doctrine of estoppel as it relates to recitals in instruments, drawing upon cases, digests and texts from both the American and English law.

■ We think that ORS 41.350 must be interpreted in the light of these probable influences and that it must, therefore, be regarded as embracing the principle of estoppel enunciated in the cases prior to its enactment. Without such a guide in the interpretation of the statute we would have no way of determining its scope and there would be the danger that the bald words of the statute, barren of a guiding principle, would produce more harm than good.

Proceeding from this premise we still are faced with additional problems of construction. The statute does not tell us which meaning of the word "recital" was intended; it does not tell us who is to be included within the term "parties thereto"; and it does not indicate under what circumstances a recital will be binding upon the parties, their representatives or successors in interest.

■■ Certainly, statements recited in an instrument need not be taken as true if they are patently contrary to known facts. Thus a recital that John Jones and John Smith were husband and wife would not be regarded as true in spite of the statute. And certainly, in enacting this statute the legislature did not intend to pronounce that all recitations, however trivial and however immaterial to the purpose of the transaction, were to be regarded as true. We interpret the word "recital" as used in the statute to mean a statement of a fact which is material, *Kellogg v. Dennis,* 38 Misc 82, 77 NYS 172 (1902), and "on which the transaction is founded." *Havel v. Decatur County Abstract Co.,* 76 Kan 336, 91 P 790 (1907); *In re Cronin's Will,* 143 Misc 559, 257 NYS 496 (1932).

In 1 Greenleaf on Evidence (Redfield Ed) p 32, it is stated that the rule giving conclusive effect to recitals in deeds does not apply "to that which is mere description in the deed, and not an essential averment; such as to quantity of land; its nature, whether arable or meadow; the number of tons in a vessel chartered by the ton; or the like; for these are but incidental and collateral to the principal thing, and may be supposed not to have received the deliberate attention of the parties."

The character of the recital is important in deter-

mining whether an estoppel will arise from its use. As stated in *Hays v. Askew,* 50 N C 63, 65 (1857) "an estoppel, as a general rule, does not grow out of a recital; to give it that effect, it must show that the object of the parties was to make the matter a *fixed fact,* as the basis of their action * * *." To the same effect is *International Trust Co. v. Palisade Light, Heat and Power Co.,* 60 Colo 397, 153 P 1002 (1916). See also Bigelow on Estoppel (6th Ed) 1913, p 416; note 28 Or L Rev 368, 374 (1949). It was said in *Brinegar v. Chaffin,* 14 N C 101, 102 (1831) that "Recitals in a deed are estoppels when they are of the essence of the contract * * *."

We consider, then, whether the recital in a deed that the grantees are husband and wife is a recital of a fact that was sufficiently related to the transaction, i.e., the transfer of title, as to constitute a representation or admission which should control the parties or their successors in interest. As between the grantor and grantee ordinarily the character of the tenancy under which the grantees will hold the property upon the transfer of title is not of any moment. In many cases not even the grantees themselves are aware that the recital is made and in those instances when they do, normally they do not purport to be asserting their status in anticipation that others will rely and act upon it.

The point we make here is clearly seen in *Brinegar v. Chaffin,* supra. In that case a deed to the defendant falsely recited that the grantors, Mary Jacks and Richard Jacks, were husband and wife. The heir of Mary sought to set the deed aside on the ground that a separate acknowledgement of the execution of the deed by Mary was not taken which, under the North Carolina Law, was necessary for the valid

execution of deeds by married women. The defendant offered to prove that Mary was not lawfully married to Richard at the time of the conveyance. The plaintiff contended that the parties to the deed and their successors were estopped by the recital to deny that the grantors were married. The court said:

"Recitals in a deed are estoppels when they are of the essence of the contract; that is, where, unless the facts recited exist, the contract, it is presumed, would not have been made. * * * In the case under consideration, that the *feme* was the wife of Jacks was not of the essence of the contract. It formed no part of it. It was a mere circumstance of description, more unfavorable to the defendant, or rather the bargainee, than if she had been *sole*. For if *sole*, the deed was effectual by sealing and delivery. If she was *covert* her private examination was necessary to make it her deed. In truth, her coverture was a fact, for which the bargainee neither gave nor received anything. Nor did he on that account receive anything by the deed which he would not have received if she had been *sole*. Neither did it form the basis, nor in any manner move or conduce to the contract. It is therefore mere matter of evidence, and like all other evidence may be rebutted by contrary proof. The evidence, therefore, that Jacks had another wife living at the time of the marriage, disproving the recital, was properly admitted." *Brinegar v. Chaffin,* 14 N C 101, 102.

If title is conveyed to unmarried persons, with a recital that they are husband and wife, a subsequent purchaser for value from the survivor of the grantees would be entitled to regard the recital as true and to assume that a tenancy by the entirety was created by the deed, if he had no knowledge of the marital status of such grantees. Although in such a case it may be said loosely that the purchaser's title cannot

be impeached by the heir of the co-grantee because he is estopped to deny the recital made by his ancestor, it is more accurate to say that the heir is precluded from attacking the purchaser's title on the basis of an entirely separate principle which recognizes that purchasers for value and without notice should be entitled to rely upon the record description of the grantee's estate. *Stone v. Culver,* 286 Mich 263, 282 NW 142 (1938), 119 ALR 515; cf. 3 Scott on Trusts (2d Ed) § 284.

But if no such policy of free alienation is involved, and no other policy or principle can be pointed to as a ground for precluding inquiry into the character of the estate created by a particular deed there would seem to be no reason for accepting as true that which is false in determining the property interest in the land conveyed.

Even if it were assumed that the grantees have made a representation of their marital status to the grantor and his successors or to subsequent purchasers taking title from the grantees, it would seem unreasonable to say that the co-grantees, in making the recital, represent to each other that they are husband and wife and that, therefore, the heirs of either are estopped to deny the truth of the assertion in the deed.

In some of the adjudicated cases the courts have improperly applied the theory of estoppel to preclude the heir. See e.g., *Alexander v. Colston, Fla,* 66 So2d 673 (1953); *Kerivan v. Fogal,* 156 Fla 92, 22 So2d 584 (1945); *Porter v. Landis,* 329 Mich 76, 44 NW2d 877 (1950), and cases cited therein; *Franklin v. Franklin,* 354 Mich 543, 93 NW2d 321 (1958). In some of these cases the result could have been reached upon the ground that the surviving grantee was the victim of fraud or upon the application of some other proper

theory. *Alexander v. Colston,* supra, at p 675; *Hawley v. Dibble,* 184 Mich 298, 151 NW 712 (1915).

■ It has been recognized in this state that a recital in a deed or contract that the grantees are husband and wife does not preclude one of the co-grantees from asserting his separate interest in the property as an unmarried person. *Merit v. Losey,* 194 Or 89, 240 P2d 933 (1952); *Hughes v. Kay,* 194 Or 519, 242 P2d 788 (1952). In each of these cases the court regarded the instrument as creating in the grantees a tenancy in common only, in spite of the fact that if the recital were taken as true the instruments would have created a tenancy by the entirety. The court did not discuss ORS 41.350, and properly so, because in the contest between the co-grantees there was no reason for treating the recital as binding upon either of them. Cf. note 32 Or L Rev 254 (1953). These cases lend support to our conclusion that the recital of the grantees' marital status in a deed is not conclusively presumed to be true as between such co-grantees.

Although the recital does not conclusively establish the fact recited, it is possible that upon other grounds, such as fraud, a co-grantee's interest in the property conveyed may be affected by his misrepresentation concerning his marital status and his legal capacity to enter into a valid marriage with his co-grantee. See e.g., *Loper v. Loper,* 170 A 804 (Del Super 1934); *Hutson v. Hutson,* 168 Md 182, 177 A 177 (1935); *Casini v. Lupone,* 8 N J Super 362, 72 A2d 907 (1950), where such defenses were raised.

■■ If the recital does not bind co-grantees inter se it would follow that it does not bind the co-grantees' heirs. This is not in accord with the view expressed in *Twigger v. Twigger,* supra. In that case the son

of F. C. Twigger, one of the grantees, was held to be bound by the recital. Because F. C. Twigger was also one of the grantors in the deed it is possible to explain the Twigger case on the ground that a grantor is estopped to contradict the recital as against his grantee and that the grantor's successor in interest stands in his shoes.

But it is quite evident from the cases relied upon in *Twigger v. Twigger,* supra, that the court regarded the recital as binding upon the successor of one of the grantees even though the conveyance came to the co-grantees from a third person. One of the cases so relied upon was *Jacobs v. Miller,* 50 Mich 119, 15 NW 42 (1883). In that case a recital indicating that the grantees were husband and wife was held binding upon the heirs of one of the grantees in a contest with the purchaser from the surviving grantee. The court intimated that the result could have been rested on the theory that a bona fide purchaser for value should be entitled to rely upon the truth of the recital. However, the court elected to rest the case on the ground that the recital was binding upon the co-grantee's heirs irrespective of the purchaser's status. The court gave several reasons for excluding the evidence which contradicted the recital. It regarded both the statute of frauds and the parol evidence rule as applicable. This was clearly error for neither of these rules of exclusion prevent one from introducing evidence of extrinsic facts, the knowledge of which is essential in order to determine what part of the substantive law is applicable, for "in so far as extrinsic facts are a legal basis of claim or defense, extrinsic evidence is good to prove them." Thayer, Preliminary Treatise on Evidence 409. See also 9 Wigmore, Evidence §§ 2436-39 (3d ed); McCormick on Evidence

§ 221. The court also based its decision on the axiom attributed to Lord Kenyon that one should not be permitted to "blow hot and cold" at the same time. The court considered the claim of the heirs of the co-grantee as violating this maxim of consistency because they endeavored to establish title under one provision of the deed but at the same time contradict another provision in the same deed. This reasoning does not appeal to us. There is no inconsistency in asserting that a deed to co-grantees "as husband and wife" operates to pass title to them but at the same time insisting that the deed creates only those interests which the law permits where the grantees are unmarried. The Jacobs case is criticized in a comment in 15 U Det L J 20 (1951).

There are other cases which have followed the Jacobs case in holding that a recital in a deed is binding on the co-grantee's heir. *Porter v. Landis,* supra; *Franklin v. Franklin,* supra. We cannot agree with the rationale in these cases. Further, we do not think that ORS 41.350 lends itself to the interpretation given to it in *Twigger v. Twigger,* supra, and in this respect the Twigger case must be overruled. We hold that there being no evidence establishing an estoppel or other ground for precluding the plaintiffs from contradicting the recital they may show the true nature of the estate created in Fred G. Sanders and Rosemary Sanders. If the grantees were not lawfully married they would take as tenants in common in the absence of other evidence in the deed showing a contrary intent. ORS 93.180; *Brandt v. Brandt,* 215 Or 423, 333 P2d 887 (1958); *Merit v. Losey,* supra; *Hughes v. Kay,* supra.

Where a conveyance is made to unmarried per-

sons who are designated in the deed as husband and wife, it is sometimes argued that although a tenancy by the entirety is not created, the intent to create a right of survivorship can be implied from the circumstance that the grantees purported to take the deed as married persons. There is authority accepting this point of view. *Maxwell v. Saylor,* 359 Pa 94, 58 A2d 355 (1948); *Frederick v. Southwick,* 165 Pa Super 78, 67 A2d 802 (1949). However, the prevailing and better view is to the contrary. *Loper v. Loper,* supra; *Spanier v. Spanier,* 120 Ind App 700, 96 NE2d 346 (1951); *Singleton v. Cushman,* 117 Ind App 183, 70 NE2d 642 (1947); *Donnelly v. Donnelly,* 198 Md 341, 84 A2d 89 (1951); *Perrin v. Harrington,* 146 App Div 292, 130 NYS 944 (1911); *O'Meara v. O'Meara,* 278 App Div 1009, 105 NYS2d 825 (1951); *Teacher v. Kijurina,* 365 Pa 480, 76 A2d 197 (1950); Kepner, The Effect of An Attempted Creation of An Estate By the Entirety in Unmarried Grantees, 6 Rutgers L Rev 550 (1952).

The defendants urge as a second ground that the court erred in holding that the marriage was void. This alternative argument runs as follows. It was established that on March 28, 1946 Fred G. Sanders and Rosemary Sanders took the deed naming them as husband and wife. This, it is argued, is evidence that they were holding themselves out as husband and wife at the time; that these facts created a strong presumption under ORS 41.360(30) that on March 18, 1946, the date of the first deed, Fred and Rosemary were legally husband and wife, which could have been true if they had been married in a jurisdiction recognizing as valid a marriage between first cousins. Therefore, the defendants argue that even if ORS 41.350(3) does not prevent the admission of evidence

showing that the Oregon ceremony did not make Fred and Rosemary legally husband and wife, this evidence is still not strong enough to refute the presumption raised by their conduct and ORS 41.360(30).

We look at the matter differently. It may be conceded for the purpose of answering defendants' argument that Fred and Rosemary's conduct created a presumption that they were husband and wife. But the plaintiffs then show that a marriage ceremony was entered into on April 18, 1946. Ordinarily, persons who are already husband and wife do not go through a second marriage ceremony. This being true, the evidence that Fred and Rosemary went through a marriage ceremony in Oregon but that under our law no legal marriage resulted is sufficient to rebut the presumption relied upon by the defendants. 2 Schouler, Marriage, Divorce & Separation §§ 1256, 1257 (6th ed). See also *In re Elliott's Estate,* 165 Cal 339, 132 P 439 (1913) construing Cal. Code Civ. Proc. § 1963(30), identical to ORS 41.360(30). If a valid marriage was in fact entered into in another jurisdiction it was then the duty of the defendants, and not the plaintiffs, to produce this evidence. Therefore, the lower court was correct in holding that the marriage was void and that the deeds in question created tenancies in common in the co-grantees.

The decree of the lower court is affirmed.